**Mathra SINGH, Appellant and Cross–Appellee,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and Wayne Dillon, Appellees and Cross–Appellants.**

**Nos. S–4549, S–4550.**

Supreme Court of Alaska.

Oct. 8, 1993.

Rehearing Denied Oct. 29, 1993.

Rehearing Granted in Part and Opinion Amended Dec. 13, 1993.

William Grant Callow, Anchorage, for appellant/cross-appellee.

David S. Carter, Hughes, Thorsness, Gantz, Powell & Brundin, Anchorage, for appellees/cross-appellants.

William E. Caldwell, Alaska Legal Services Corp., Fairbanks, and Carol H. Daniel, Alaska Legal Services Corp., Anchorage, for amicus curiae Alaska Legal Services Corp.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Chief Justice.

This appeal involves the grant of attorney's fees to a civil rights litigant pursuant to 42 U.S.C. § 1988. The underlying civil rights and defamation causes of action arose out of the handling of Mathra Singh's third-party insurance claim by State Farm Insurance Co. and Wayne Dillon, a State Farm senior claims specialist.

## FACTS & PROCEEDINGS

Mathra Singh is a 67–year–old man who was born and raised in Delhi, India and is a member of the Sikh religion. Singh moved to Anchorage in 1986. In 1988, he and his son began driving a taxi for Yellow Cab.

On September 30, 1988, Singh suffered soft-tissue injuries to his back and neck, as well as injuries requiring surgery on his hand, when his taxi was struck by a vehicle driven by Patrick Stone. Stone was insured by State Farm Mutual Automobile Insurance (State Farm). Singh subsequently submitted a claim to State Farm for damages related to the accident. The investigation and handling of Singh's claim was assigned to Wayne Dillon, a State Farm claims representative.

Singh alleges that when Dillon went to Singh's residence to investigate the claims, Dillon was extremely hostile. During his visit, Dillon allegedly began "yelling [and] screaming" at Singh and his family. When Singh told him that he really had suffered an injury, "Mr. Dillon yelled and he said, 'anybody can put that collar on his neck.'"

Two deponents testified that Dillon used racial and ethnic slurs when referring to Singh and his insurance claim. Jo Ann Dobbert, the office manager of the Anchorage Neuro–Spinal Clinic where Singh received some of his medical treatment, testified that she telephoned State Farm and asked Dillon for a claim number for her records. Dillon told her that Singh had "no claim" and that "those ragheads will do anything to get someone else to pay their bills for them." Dobbert registered complaints by telephone to both the head of State Farm for Alaska and the office of the director of the Alaska Division of Insurance.

A second deponent, Lynnie Ben–Ezra, a licensed independent insurance agent who provided insurance to Singh, also testified that she spoke to Dillon regarding Singh's claim. During the conversation, Dillon referred to Singh with an "ethnic slur" and indicated that Singh was exaggerating his injuries, "malingering," "overextending" his claim, and "abusing the system."

Singh also asserts that Dillon treated him in a discriminatory fashion by failing to follow State Farm's policy of offering what was determined to be the "fair value" of every claim.[1] Singh further asserts that while Dillon was assigned to his case, instead of offering a settlement for fair value, Dillon persisted in employing stall tactics to avoid payment. State Farm claims that it was actively pursuing a settlement, and that the reason that a settlement could not be executed immediately was that up until the time that he filed suit, Singh was still undergoing medical treatment related to injuries sustained in the accident, including surgery on his finger.

Singh filed a complaint against State Farm and Dillon requesting relief under 42 U.S.C. § 1981, a state anti-discrimination statute, and state tort law pertaining to defamation. Singh sought judgment against Dillon and State Farm for "compensatory and punitive damages in excess of the jurisdictional limit of the Alaska State District Court." On motion for summary judgment by State Farm, the superior court dismissed Singh's claims for relief under Alaska's anti-discrimination statute (AS 18.80.210, .250, and .260) but denied State Farm's motion to dismiss the § 1981 and defamation claims. The superior court held that racial discrimination in the formation of an insurance settlement contract fell within the scope of 42 U.S.C. § 1981; that discrimination on the basis of ethnicity or ancestry was racial discrimination for purposes of § 1981; and that Singh had raised a genuine issue of material fact as to whether such discrimination had occurred. The superior court further concluded that Singh had raised a genuine issue of material fact regarding his defamation claim.

In March 1990, State Farm extended an offer to settle all of Singh's claims and actions against State Farm's insureds Patrick and Allen Stone for the sum of $23,000. Singh accepted the offer.[2]

On July 26, 1990, State Farm and Dillon made an offer of judgment to Singh. The offer of judgment did not specifically identify the individual claims of the lawsuit; it stated that the defendants "hereby offers [sic] to allow judgment in favor of Mathra Singh in this action for [$17,501] plus applicable costs, interest and attorney's fees as set by this court." Singh accepted the offer, and subsequently filed a motion for attorney's fees and costs pursuant to 42 U.S.C. § 1988. In support of this motion, Singh's attorney provided an affidavit and a detailed billing statement, which indicated that he had expended 228 hours in attorney time, at a fee rate of $140 per hour for a total of $31,920 in attorney's fees. Singh's attorney additionally argued before

---

1. Singh bases his claim of discriminatory treatment by Dillon in part on an affidavit by attorney John R. Lohff, who stated that during the time that Dillon was handling Singh's claim, Dillon offered to pay one of Lohff's clients $97,000 for a soft-tissue back injury that "aggravated a previous back injury the man had suffered in a previous collision that had occurred two months earlier." Lohff's client was a white male in his mid-fifties.

2. Previously Singh had accepted State Farm's offer of $3,735 as total payment for the loss of his taxi in the accident.

the superior court that his fee should be enhanced by at least 100% of $31,920, and that he should be reimbursed for $20,000 in attorney's fees expended in litigating the § 1988 attorney's fee issue before the superior court.

The superior court found that "plaintiff achieved significant relief in that he settled his defamation and § 1981 claims for the principal amount of $17,501." The superior court further concluded that Singh's success on his civil rights claims was limited, since much of his litigation effort had addressed state claims for relief that had been found to be without merit. The court also observed that "the level of preparation of this case is disproportionate to the complexity of the case as well as the relief achieved." Thus the superior court reduced Singh's fee award to fifty-five percent of the "lodestar" amount, awarding $17,556 for legal services performed prior to judgment. The superior court refused to enhance the lodestar amount to compensate for the risk of nonpayment of attorney's fees. Finally, the court awarded $2,000 of the requested $20,000 in attorney's fees arising out of the litigation regarding Singh's attempt to obtain 42 U.S.C. § 1988 attorney's fees.

Singh appeals from the superior court's reduction of his requested attorney's fee award, the court's denial of his request for fee enhancement, the court's limited award of $2,000 in attorney's fees for his efforts to obtain an award under 42 U.S.C. § 1988, and the court's dismissal of his three claims under Alaska's anti-discrimination statute.

State Farm cross-appeals, arguing that the superior court erred in applying 42 U.S.C. § 1981 to insurance claims, in denying State Farm's motion for summary judgment on Singh's § 1981 discrimination claim, and in ruling that Singh was entitled to an award of attorney's fees under 42 U.S.C. § 1988.

# I. DID THE SUPERIOR COURT ERR IN ITS RULINGS ON STATE FARM'S MOTION FOR SUMMARY JUDGMENT?

■ Both Singh and State Farm challenge aspects of the superior court's ruling

on State Farm's motion for summary judgment. State Farm argues in its cross-appeal that the superior court erred in denying it summary judgment on Singh's § 1981 discrimination claim. Singh argues on appeal that the superior court erred in granting State Farm summary judgment on his three separate claims for relief under the Alaska anti-discrimination statute. We have held that a right to appeal is waived by stipulating to judgment. *Harold's Trucking v. Kelsey*, 584 P.2d 1128, 1129–30 & n. 3 (Alaska 1978) (right to appeal is waived by stipulating to entry of judgment on an arbitration award). Since these claims are within the scope of the consent judgment, both parties waived their rights to appeal the merits of the superior court's ruling on State Farm's motion for summary judgment.

# II. DID THE SUPERIOR COURT ABUSE ITS DISCRETION IN ITS AWARD OF ATTORNEY'S FEES?

■ The award of attorney's fees by the superior court in the instant case is governed by the 1976 Civil Rights Attorney's Fees Awards Act:

> In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the *prevailing party,* other than the United States, a *reasonable attorney's fee* as part of the costs.

42 U.S.C. § 1988 (Supp.1992) (emphasis added). A § 1988 attorney's fee award, then, has two requirements: (1) the recipient must be a "prevailing party;" and (2) the fee awarded must be "reasonable." We address these requirements in turn.

## A. *Prevailing Party*

State Farm and Dillon argue that the superior court abused its discretion by disregarding this court's holding in *Tobeluk v. Lind,* 589 P.2d 873 (Alaska 1979), in its determination of "prevailing party." Since

our consideration of and decision in *Tobeluk*, however, federal case law has developed considerably regarding the "prevailing party" determination in the settlement context. As we did in *Tobeluk*, we now look to the prevailing federal view on this issue.

■ State Farm does not seem to dispute that settlement of a valid, existing § 1981 claim would make Singh a prevailing party under § 1988.[3] Rather, State Farm argues that "[h]ad the trial court properly analyzed and applied the law to the circumstances presented in this case, it would have dismissed Singh's alleged § 1981 claim long before the offer of judgment was accepted." Implicit in this argument is the sentiment that a settling litigant should not become eligible for § 1988 attorney's fees by merely reciting an otherwise frivolous § 1981 or other federal civil rights claim in his complaint. In response to this sentiment, the majority of federal circuits have developed a two-part test for determining prevailing party status in the settlement context. 2 Martin A. Schwartz & John E. Kirklin, *Section 1983 Litigation: Claims, Defenses, and Fees* § 18.11, at 48–49 (1991).

The Fifth Circuit's test for determining a prevailing party in the settlement context is typical of the approach taken by a majority of the federal circuits.[4] That court has set forth two requirements for determining prevailing party status: (1) the plaintiff's suit must have *caused* the plaintiff's achievement of his desired goal in the litigation; and (2) the claim forming the basis of § 1988 fees must not "lack[ ] colorable merit." *Hennigan v. Ouachita Parish Sch. Bd.*, 749 F.2d 1148, 1152–53 (5th Cir. 1985). The first requirement, causation, is easily fulfilled in the present case. It seems quite clear, and none of the parties argue otherwise, that the settlement for money damages—one of Singh's goals in filing the suit—was caused by this litigation. The second requirement, a meritorious claim, requires further analysis.

The Fifth Circuit places the burden on the party opposing attorney's fees to show lack of merit: "A defendant who contends that his conduct was a wholly gratuitous response to a lawsuit that lacked colorable merit, must demonstrate the worthlessness of the plaintiff's claims and explain why he nonetheless voluntarily gave the plaintiffs the requested relief." *Id.* at 1153. In its briefs to this court, State Farm argues that Singh's § 1981 claim is without merit. We now address whether Singh asserted a claim of "colorable merit" under § 1981.

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981 (1988). Singh alleged that State Farm's refusal to pursue a fair settlement "contract" for his injuries was partly the result of racial animus. State Farm responds that handling of insurance claims does not fall within the meaning of "contract" as used in 42 U.S.C. § 1981. *See Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) (holding that § 1981 is restricted to

---

**3.** Section 1988 attorney's fees are appropriate if a settlement disposes of a federal civil rights issue that "remained in the case until the entire case is settled," *Maher v. Gagne*, 448 U.S. 122, 134, 100 S.Ct. 2570, 2577, 65 L.Ed.2d 653 (1980) (Powell, J., concurring), and the issue disposed of is a "significant issue in litigation." *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 788, 109 S.Ct. 1486, 1491, 103 L.Ed.2d 866 (1989). In the present case, Singh's § 1981 claim survived summary judgment and, thus, remained in the suit until settlement. Additionally, it cannot be disputed that the § 1981

claim was a "significant" matter in the litigation. The only remaining issue, discussed above, is whether Singh must also make some showing that his § 1981 claim was meritorious in order to receive § 1988 attorney's fees.

**4.** Singh cites to the First Circuit's formulation of this approach. *See Nadeau v. Helgemoe*, 581 F.2d 275 (1st Cir.1978); *see also* Schwartz & Kirklin, *supra*, § 18.11, at 49–62 (listing federal cases applying a similar two-part test).

the making and enforcement of contracts). In denying State Farm's motion for summary judgment, the superior court adopted Singh's reading of § 1981, stating that "an insurance company's refusal to enter into a settlement agreement with an injured party who was not its own insured fell within the purview of 42 U.S.C. § 1981 if the basis for refusal was racial discrimination."[5] We agree.

■■■ It is well established that a settlement is a contract, provided that it meets minimal contractual requirements. *See Dillon v. City of Davenport*, 366 N.W.2d 918, 925 (Iowa 1985); *Eide v. State Farm Mut. Auto. Ins. Co.*, 492 N.W.2d 549, 555 (Minn.App.1992); *Randall v. Harmon*, 761 S.W.2d 278, 279 (Mo.App.1988). Specifically, we have held that a consent judgment is a contract. *Continental Ins. Co. v. Bayless & Roberts, Inc.*, 608 P.2d 281, 295 (Alaska 1980); *Tobeluk v. Lind*, 589 P.2d 873, 881 (Alaska 1979). The agreements settling Singh's damages from the automobile accident meet the basic requirements for a valid contract. State Farm and Dillon made an offer of compromise to Singh, which Singh accepted. For total consideration of $26,735, Singh agreed to forego litigation against State Farm's insureds.[6] On this analysis, we conclude that Singh pled a colorable § 1981 claim when he argued that State Farm racially discriminated against him in forming the initial settlement contracts.

## B. Reasonableness of Attorney's Fees

■■■ Singh argues that the superior court abused its discretion in reducing the § 1988 attorney's fee award to fifty-five percent of the lodestar amount. Under *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), a court awarding § 1988 attorney's fees to a prevailing party initially should compute "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* at 434, 103 S.Ct. at 1940. There is a strong presumption that this amount, which is known as the "lodestar" value, represents a "reasonable fee."[7] Adjustments are made only as required by special circumstances. *See Cunningham v. County of Los Angeles*, 879 F.2d 481, 484 (9th Cir.1988), *cert. denied*, 493 U.S. 1035, 110 S.Ct. 757, 107 L.Ed.2d 773 (1990).

■■■ The court may adjust the lodestar value upward or downward based on other considerations such as the "results obtained."[8] *Hensley*, 461 U.S. at 434, 103 S.Ct. at 1940. In a case where a prevailing party plaintiff is successful on some, but not all, of his claims, the court should address two other questions: "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" *Id.* Additionally, if an unsuccessful claim is frivolous, not only is the plaintiff barred from recovery of

---

5. The superior court further held that the term "racial discrimination" included discrimination based on religious affiliation or ethnic origin. *See Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 613, 107 S.Ct. 2022, 2028, 95 L.Ed.2d 582 (1987). We note that the superior court correctly interpreted *Al-Khazraji* as barring discrimination based on ancestry and ethnicity. *Id.* at 613, 107 S.Ct. at 2028.

6. At the time the offer was made and accepted Singh's remaining claims for relief consisted of his defamation claim and his § 1981 discrimination claim.

7. The United States Supreme Court recently held that where a plaintiff's recovery is merely technical, or de minimis, a court may award low fees or no fees without calculating or adjusting the lodestar. *Farrar v. Hobby*, —— U.S. ——, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992). In

*Farrar*, the plaintiff had recovered one dollar on a $17 million civil rights claim. *Id.* —— U.S. at ——, 113 S.Ct. at 574–75. The Supreme Court held that while the plaintiff was a prevailing party, his success was de minimis, and therefore he was not entitled to a § 1988 fee award. We find that *Farrar* is inapplicable to the case at bar, since Singh's success was not merely technical.

8. The Supreme Court noted that in adjusting an attorney's fee award, a court may consider the so-called "Johnson factors" as identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974), although many of these factors will be subsumed within the original lodestar determination. *Hensley*, 461 U.S. at 434 n. 9, 103 S.Ct. at 1940 n. 9.

attorney's fees related to the claim, but the defendant may recover fees for defending against such a claim as well. *Id.* at 435, 103 S.Ct. at 1940.

### 1. Relationship between successful and unsuccessful claims

Describing the situation in which successful and unsuccessful claims are factually or legally intertwined, the Supreme Court noted,

> In [some] cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

*Hensley,* 461 U.S. at 435, 103 S.Ct. at 1940, *quoted approvingly in City of Riverside v. Rivera,* 477 U.S. 561, 569, 106 S.Ct. 2686, 2691, 91 L.Ed.2d 466 (1986).

■ The superior court's decision implicitly accepts Singh's argument that his successful and unsuccessful claims fell under the second scenario described in *Hensley,* namely that the claims were legally and/or factually intertwined. Neither party has contested the superior court's determination that the claims were intertwined. Based on our review of the relationship between the state and federal civil rights claims, we conclude that the superior court did not err in determining that the claims were intertwined.[9]

### 2. Degree of success

Since Singh's claims were intertwined, we assess the reasonableness of attorney's fees by "focus[ing] on the significance of the overall relief obtained by the plaintiff

in relation to the hours reasonably expended on the litigation." *Id.* 461 U.S. at 435, 109 S.Ct. at 1940. In establishing Singh's attorney's fee award, the superior court focused on the following portion of *Hensley:*

> [T]he product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, non-frivolous, and raised in good faith.... Again, the most critical factor is the *degree of success obtained.*

*Id.* at 436, 103 S.Ct. at 1941 (emphasis added). The superior court noted that under *Hensley,* "[a] reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Id.* The superior court then concluded that Singh's success was limited because of the dismissal of his three state civil rights claims for relief:

> In this case, plaintiff achieved significant relief in that he settled his defamation and § 1981 claims for the principal amount of $17,501. On the other hand, a substantial portion of the motion for summary judgment and the work that went into litigation of that motion addressed a state civil rights cause of action which was without merit and would have required a court to employ a tortured construction of the clear language of the statute. Thus, plaintiff's success on his civil rights claim was limited in this regard.

■ Upon review of the record and the relevant case law we conclude that the superior court erred in its reduction of Singh's attorney's fees from the lodestar amount for two reasons. First, as we have previously recognized, "[f]ull attorney's fees are the norm under 42 U.S.C. § 1988," but "such fees must be reasonable." *Moseley v. Beirne,* 626 P.2d 580, 581 (Alas-

---

**9.** In his summary of attorney work effort, Singh's attorney described his work by category, but did not delineate his efforts by individual claim. We note that in the future, civil rights plaintiffs would be well advised to document their work effort by claim to avoid reduction of a fee award by percentage where unsuccessful claims are found to be unrelated to successful claims.

ka 1981). Second, we believe that the superior court erred in its determination that Singh's level of success did not merit a full award of attorney's fees.

The degree of success is difficult to measure, particularly in a civil rights case such as this one, where a settlement has precluded a trial on the merits. We note that Singh's financial recovery represented a significant proportion of the damages that he requested. In his initial complaint, Singh requested compensatory and punitive damages in excess of the jurisdictional limits of our district court, or $35,000. *See* AS 22.15.030. The total of the two settlements Singh obtained exceeded this amount. While it is not possible to quantify Singh's § 1981 damages specifically, since the second settlement aggregated damages for both the defamation and civil rights claims, Singh's total recovery of $17,501 is significant. Additionally, we find that Singh's litigation served a public purpose within the scope of the "private attorney general theory" of civil rights litigation, as first expressed in *City of Riverside v. Rivera,*

477 U.S. 561, 575, 106 S.Ct. 2686, 2694, 91 L.Ed.2d 466 (1986).

### 3. *Proportionality of fees to the complexity of the case*

The superior court found that the level of effort expended by Singh's counsel was "disproportionate" to the complexity of the case, and that this factor also warranted an adjustment downward from the lodestar amount of attorney's fees.[10] Singh challenges the superior court's conclusion that his attorney's work effort was disproportionate to the complexity of the case and the relief obtained.[11]

Upon consideration of the complexity of the case and the relief obtained, we hold that the superior court erred in finding Singh's attorney's work effort disproportionate to those other variables. Singh's briefing on this point, and the affidavits of Alaskan attorneys attesting to the reasonableness of his legal efforts, are persuasive. Our review of the record convinces us that Singh's attorney's fees were justified in light of the complexity of this litigation and the result achieved.[12]

10. The superior court cited two examples of work that it considered "disproportionate": "[T]hree hours billed for '[r]esearch voir dire inquiry re: tort reform; policy holder status; religion; prior contacts' ... three and one-half hours billed for '[r]esearch admiss. of Bests's/Moody's/Standard/Poor insurance ratings.'"

11. Amicus Curiae Alaska Legal Services submitted a brief in support of Singh's position. Alaska Legal Services argues that it appears from the record that without providing any acceptable rationale, the superior court reduced the fee award to $17,556 to make it commensurate with the settlement judgment of $17,501. Alaska Legal Services notes that in *Rivera* the Supreme Court expressly "reject[ed] the proposition that fee awards under § 1988 should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers." 477 U.S. at 574, 106 S.Ct. at 2694. In *Rivera,* the Supreme Court noted that "unlike private tort litigants, a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms." *Id.*

Singh further argues that State Farm's contentious litigation tactics were the cause of a large

amount of his attorney's fees. Singh asserts that these tactics included a number of incidents. First, State Farm produced nominally responsive answers to discovery requests concerning questions such as its net worth, which caused Singh both to file motions to compel responses, which ultimately were successful, and to conduct independent research on State Farm such as his research of insurance reports published by Best's, Moody's and Standard and Poor. Second, State Farm filed protective orders concerning discovery requests on the ground that the information sought by Singh was personal, subject to constitutional rights of privacy, and irrelevant. When the superior court ordered State Farm to produce the information for an *in camera* inspection, however, State Farm declined the opportunity and gave the information to Singh, suggesting that State Farm knew that the privacy claims were unfounded. Third, State Farm made detailed, time-consuming requests for itemization from Singh, including, for example, a request for specific dollar amount itemization of medical bills, instead of reference to billings generally.

12. Significant portions of Singh's attorney's work efforts were expended in reaction to a pattern of non-responsiveness by State Farm.

#### 4. *Proportionality of fees to damages*

The attorney's fees that Singh requested exceeded the damages he recovered in the settlement. The United States Supreme Court has rejected the proposition that fees awarded under § 1988 for civil rights litigation must be less than the damages recovered. *Id.* The *Rivera* plaintiffs received a $33,350 damages award. Their attorneys requested $245,456.25 in fees. The Court upheld the award in a 5–4 decision.

Justice Brennan, writing for a 4–Justice plurality, categorically rejected the need for proportionality in civil rights cases, holding that such cases have inherent public benefits. *Id.* at 575, 106 S.Ct. at 2695 (plurality opinion).

Justice Powell concurred, but stated that "[i]t probably will be the rare case in which an award of *private damages* can be said to benefit the public to an extent that would justify the disproportionality between damages and fees reflected in this case." *Rivera,* 477 U.S. at 586 n. 3, 106 S.Ct. at 2700 n. 3. (Powell, J., concurring). He indicated that the "public interest" served by civil rights litigation, as well as the damages awarded, might support such a disproportionate award, though he did not specify what degree of disproportionality requires such an analysis. While Justice Powell limited his discussion to the vindication of constitutional rights, the reasoning of his concurrence may be extended to civil rights litigation involving the vindication of statutory rights as well.

The ambiguity created by the divisions in *Rivera* has led the federal circuit courts in different directions. Schwartz & Kirklin, *supra,* at 304–07. Some courts have treated Justice Powell's concurrence as the controlling law. *See Foley v. City of Lowell,* 948 F.2d 10, 19–20 (1st Cir.1991); *Nephew v. City of Aurora,* 830 F.2d 1547, 1550 (10th Cir.1987). Others have declined to do so. *See Cowan v. Prudential Ins. Co. of America,* 935 F.2d 522, 525–26 (2d Cir. 1991); *Bell v. United Princeton Properties, Inc.,* 884 F.2d 713, 724 (3d Cir.1989).

 There is no need in this case for a remand to the superior court for consideration of the public interest served by the litigation. As noted above, a majority of the United States Supreme Court has not endorsed the notion that such an analysis is ever necessary. Moreover, the gross disproportionality of the fees requested in *Rivera* is not present here. Singh settled for $17,501, and requested $31,920 in fees. This is in sharp contrast with *Rivera,* where requested fees were almost seven times the damages award.

#### 5. *Enhancement of lodestar amount*

 Singh argues that the "United States Supreme Court has held that in appropriate circumstances it is permissible and proper for a court to 'enhance' an attorney fee award based on contingent fee risk in order to fulfill the statutory goal of awarding reasonable attorney's fees to prevailing parties in discrimination cases under 42 U.S.C. § 1988." *See Pennsylvania v. Delaware Valley Citizens' Council,* 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987). Briefing in this appeal, however, was concluded prior to the Supreme Court's decision in *City of Burlington v. Dague,* —— U.S. ——, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992). In *Dague,* the Supreme Court held that a federal fee-shifting statute did not allow upward adjustment of a lodestar fee for the risk of nonpayment incurred by the prevailing party's attorney. While *Dague* involved environmental litigation, its reasoning applies to all federal fee-shifting statutes. *Id.* at ——, 112 S.Ct. at 2641; *see also Gates v. Deukmejian,* 987 F.2d 1392, 1403 (9th Cir. 1992) ("Given the Court's holding in *Dague,* it is clear that contingency multipliers are no longer permitted under § 1988."); *Barrow v. Falck,* 977 F.2d 1100, 1105 (7th Cir.1992) ("*Dague* ... prohibits enhancements under § 1988."). Thus, we affirm the superior court's denial of Singh's request for enhancement of his lodestar fee.

This pattern continued after the settlement was accepted. Singh notes that "State Farm not only failed to offer evidence of its own attor-ney's fees in this case, but disobeyed a lawful subpoena to produce such information...."

## III. DID THE SUPERIOR COURT ABUSE ITS DISCRETION IN AWARDING 10% OF SINGH'S CLAIMED ATTORNEY'S FEES FOR LEGAL SERVICES PERFORMED IN CONNECTION WITH SINGH'S § 1988 ATTORNEY'S FEE APPLICATION?

The superior court awarded Singh $2,000 for attorney's fees for legal services rendered in connection with his application for an award of attorney's fees pursuant to § 1988. In rejecting Singh's $20,000 fee request, the superior court reasoned: "As the court in *Hensley v. Eckerhart* noted, 'a request for attorney's fees should not result in a second major litigation,' 461 U.S. at 437, [103 S.Ct. at 1941], and the requested $20,000 for litigation of these fees is approximately two-thirds of the total amount claimed by plaintiff for full fees for the underlying litigation."

Singh argues that the superior court erred in reducing attorney's fees for work performed in connection with his § 1988 attorney's fees application for three reasons: (1) State Farm did not contest the time claimed for such work; (2) the superior court did not find that any specific task, or amount of attorney time spent on any task, in connection with the fee litigation, was unreasonable; and (3) the superior court's decision imposes a penalty solely upon Singh's counsel for what the superior court assumed to be a "second major litigation." Singh argues that the superior court's $2,000 award is unfair because State Farm's attorneys were paid for all time spent contesting Singh's § 1988 fee application, and thus Singh's counsel alone has been penalized by the superior court's decision.

▉ As the prevailing party in a § 1981 case, Singh is entitled to an award of attorney's fees pursuant to § 1988 for the time expended in establishing his entitlement to attorney's fees. *Clark v. City of Los An-*

*geles*, 803 F.2d 987, 992 (9th Cir.1986) ("We, like every other court that has considered the question, have held that the time spent in establishing entitlement to an amount of fees awardable under § 1988 is compensable."); *accord Rose Pass Mines, Inc. v. Howard*, 615 F.2d 1088, 1093 (5th Cir.1980) (per curiam) ("We have long *required* an attorney to file a detailed account of the legal services he provided the bankrupt in order to recover any compensation at all for his services. It would be unduly penurious to require such an accounting without granting reasonable compensation.") (citation omitted).

We hold that the rationale employed by the superior court in awarding Singh only $2,000 of his request for an award of $20,000 in attorney's fees is mistaken. While we are mindful of the Supreme Court's cautionary directive in *Hensley* that litagation for attorney's fees should not constitute a second major litigation, we believe that logic and subsequent federal case law cast that directive in a light of moderation. Scrutiny of legal costs incurred as a consequence of an application for attorney's fees under § 1988 should focus on whether the time expended was reasonable in light of all the surrounding circumstances. *See, e.g., Grano v. Barry*, 783 F.2d 1104, 1114–15 (D.C.Cir.1986) (upholding an award of fees incurred in litigation for § 1988 attorney's fees where no showing had been made that "the time spent on attorneys' fees ... was unreasonable, could have been avoided, or was unrelated to the fee award").

If in fact Singh's attorney failed to exercise reasonable billing judgment, the award should be reduced accordingly.[13] Alone, the fact that the total time spent in litigating Singh's § 1988 application for attorney's fees represents a significant percentage of Singh's attorney's fees incurred in connection with the underlying merits action is not a sufficient justification for the

---

**13.** For example, recovery of attorney's fees for assembling the affidavits of twenty-five experts may be contrary to the spirit of Alaska Administrative Rule 7(c), which provides in part:

A party may not recover costs for more than three expert witnesses as to the same issue in

any given case, unless the judge permits recovery for an additional number of expert witnesses. *See Gates v. Deukmejian*, 977 F.2d 1300, 1314 (9th Cir.1992); *Norman v. Housing Authority of Montgomery*, 836 F.2d 1292, 1300

superior court's reduced $2,000 award of attorney's fees. We therefore vacate the $2,000 award and remand the matter to the superior court for redetermination of an appropriate attorney's fee award for work done on the fee application.

### CONCLUSION

The superior court's rejection of Singh's request for an enhanced award of attorney's fees under § 1988 is **AFFIRMED.** The superior court's award of $17,556 in attorney's fees (representing 55% of the attorney's fees requested by Singh) is **REVERSED** and **REMANDED** with directions to enter an award in the amount of $31,920 for Singh's reasonable attorney's fees in the underlying litigation.[14] The superior court's award of $2,000 in attorney's fees to Singh for services incurred in connection with his efforts to obtain an award of attorney's fees pursuant to § 1988 is **VACATED** and **REMANDED** with directions to redetermine its award of attorney's fees for work done on Singh's § 1988 attorney's fees application.

MATTHEWS, Justice, dissenting in part.

Singh settled his civil rights/defamation case for $17,501. The trial court awarded him an additional $17,556 in attorney's fees under 42 U.S.C. § 1988. Today's opinion holds in part that the trial court abused its discretion as a matter of law and should have awarded attorney's fees of $31,920 for work leading up to the settlement. I do not join in this conclusion for the reasons that follow.

Because it is not economically reasonable to spend $2.00 to make $1.00, the degree of success in litigation where only money is at issue is easy to measure. Litigation is not successful, even where the recovery may be called "significant," if the amount spent to obtain a recovery exceeds the amount of the recovery. By this measure this case was not successful. I would suggest that

if a claimant's lawyer were to recommend that a case be settled for $17,000 and then, upon settlement, were to send his client a bill for $31,000, the lawyer would have a very difficult task in explaining to the client—and perhaps the fee arbitration panel of the bar association—why the requested fee was a reasonable one.[1] Yet, on essentially these facts, the court today holds that such a fee is reasonable as a matter of law.

Because this is a civil rights case it is possible that the fee mandated by today's opinion should be awarded. Civil rights cases, including those where only money damages are sought, may have a public value which cannot be measured economically. If this is such a case, attorney's fees at a higher level than would be regarded as reasonable in commercial litigation may be warranted. Such a determination, however, should be made by the trial court.

Justice Powell addressed the issue of proportionality between the actual recovery and fees in civil rights cases in casting the deciding vote in *City of Riverside v. Rivera,* 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986). In *Riverside,* the plaintiff sought $245,456.25 for attorney's fees incurred in recovering $33,350 in damages. Justice Powell wrote that "[i]t probably will be the rare case in which an award of *private damages* can be said to benefit the public interest to an extent that would justify the disproportionality between damages and fees reflected in this case." *Id.* at 586 n. 3, 106 S.Ct. at 2700 n. 3 (Powell, J., concurring in the judgment) (emphasis in original). He voted to uphold the fee award, however, deferring to the trial court's finding that the plaintiff's suit "served the public interest by vindicating important constitutional rights." *Id.* at 583, 106 S.Ct. at 2699.

This establishes a framework for assessing the reasonableness of a fee award in light of the proportionality between the amount recovered and the fees sought. Under this framework, no fee adjustment

---

(11th Cir.1988); *King v. Palmer,* 906 F.2d 762, 766 (D.C.Cir.1990), *rev'd on other grounds,* 950 F.2d 771, 785 (D.C.Cir.1991) (en banc).

**14.** State Farm does not contest the reasonableness of the claimed 228 hours in attorney time

at a fee rate of $140 per hour. Our holdings have made it unnecessary to address any other contentions of the parties or amici.

**1.** *See* Alaska Bar Rules 34 and 35.

is necessary if the amount recovered substantially exceeds the fees sought. If, however, the fees sought equal or exceed the amount recovered, the court must consider whether plaintiff's suit "served the public interest" sufficiently to justify a disproportionate fee. If so, the "lodestar" fee may be awarded. If not, the court should adjust the fee accordingly.[2]

In the present case, the trial court never specifically addressed the possible public interest value of this litigation. For this reason, I believe that this case should be remanded for further consideration of attorney's fees under Justice Powell's proportionality analysis.

If the trial court were to determine that this litigation did not have a public interest value which required a fee in excess of the settlement amount, I would not hold that the fee awarded was an abuse of discretion. The trial court found that this case was overlitigated by Singh's attorney, suggested that he lacked "billing judgment," and gave credible examples in support of these conclusions.

**2.** Several federal circuits follow the Powell proportionality approach. *See, e.g., Ustrak v. Fairman,* 851 F.2d 983, 989 (7th Cir.1988); *Nephew v. City of Aurora,* 830 F.2d 1547, 1550–51 (10th Cir.1987), *cert. denied,* 485 U.S. 976, 108 S.Ct. 1269, 99 L.Ed.2d 481 (1988); *Gonzales v. Jillson,* 642 F.Supp. 908, 909 (D.Mass.1986) (awarding full fees because "significance of [low] monetary award is outweighed by the important public interests vindicated by the general jury verdict").