Matthew BOBICH, Grace Black, Diane Black–Smith, David Richards, and Craig Smith, individually and as partners in ABC Partnership, d/b/a Publix Storage, and as partners in ABC Investment Group, d/b/a Dimond Ministorage; Matthew Bobich and David Richards as partners in Dimond Self–Storage, a/k/a Dimond Mini–Storage; ABC Partnership, d/b/a Publix Storage; Dimond Mini–Storage, Appellants and Cross–Appellees,

v.

Alvie HUGHES and Wanda Hughes, Appellees and Cross–Appellants.

Nos. S–7677, S–7678.

Supreme Court of Alaska.

Sept. 11, 1998.

Darryl Thompson, Anchorage, for Appellants and Cross–Appellees.

Kenneth W. Legacki, Anchorage, for Appellees and Cross–Appellants.

Before MATTHEWS, C.J, and COMPTON, EASTAUGH, FABE and BRYNER, JJ.

*OPINION*

BRYNER, Justice.

Alvie and Wanda Hughes, former employees at a storage facility owned by Matthew Bobich, sued Bobich in 1991 for unpaid overtime compensation and medical benefits. In 1995, the parties settled the merits of the case, leaving open issues of attorney's fees and prejudgment interest. The superior court later issued orders awarding limited attorney's fees to the Hugheses and entering final judgment in their favor. Bobich appeals, challenging the attorney's fee award; the Hugheses cross-appeal, focusing on the fee award and final judgment order. Because we find no error or abuse of discretion in the superior court's rulings, we affirm.

## I.  *FACTS AND PROCEEDINGS*

Alvie and Wanda Hughes began working at Publix Storage in Anchorage in February 1990. In July 1991, after the Hugheses stopped working at Publix, they sued Bobich and his business partners (collectively Bobich), seeking unpaid overtime wages under the Alaska Wage and Hour Act, AS 23.10.050–.150 (AWHA). The Hugheses also sought payment of medical benefits that Bobich had allegedly promised but never provided. Bobich answered the complaint and filed several counterclaims, alleging that the Hugheses had deliberately failed to perform their jobs, damaged Publix's business, damaged its computer system, and converted business property.

On June 25, 1992, Bobich submitted offers of judgment to the Hugheses, offering them payment "as to [their] claims for overtime compensation in the amount of [$10,000 for Alvie and $20,000 for Wanda] . . . inclusive of all costs, interests and attorneys' fees." The Hugheses rejected these offers.

The case was later dismissed as a result of discovery violations; we reversed the dismissal order and remanded to the superior court. *See Hughes v. Bobich*, 875 P.2d 749 (Alaska 1994).

In 1995, after the remand, Bobich again submitted offers of judgment on the overtime claims, offering $3000 to Alvie and $9000 to Wanda, but this time specifying that "[t]he amount of the offer . . . does not includ[e] . . . prejud[g]ment interest, liquidated damages, costs or attorneys' fees." Bobich's new offers proposed that the court determine these incidental items. The Hugheses accepted Bobich's offers. They resolved their medical benefits claim against Bobich at a settlement conference. Superior Court Judge Brian C. Shortell then issued orders awarding limited attorney's fees to the Hugheses and entering final judgment.

## II.  *BOBICH'S APPEAL*

Bobich argues that the court erred in concluding that the earlier offers were not more favorable to the Hugheses than the final judgment. In interpreting offers of judgment, we rely on contract principles and apply our independent judgment. *See Jaso v. McCarthy*, 923 P.2d 795, 801 (Alaska 1996). The interpretation of Alaska Civil Rule 68 is also a question of law that we review *de novo*. *See Jaso*, 923 P.2d at 801.

Under Rule 68, if the Hugheses' final judgments were less favorable than Bobich's 1992

offers of judgment, which they rejected, they would have been required to pay Bobich's post-offer attorney's fees and would not have been entitled to receive post-offer attorney's fees from Bobich.[1] But the superior court concluded that the 1992 offers of judgment were not more favorable to the Hugheses than their 1995 settlement. The court thus awarded $3000 to Alvie and $9000 to Wanda in unpaid overtime wages; under former AS 23.10.110(a),[2] the court also awarded like amounts in liquidated damages.[3] Finding that the Hugheses were prevailing parties, the court additionally awarded attorney's fees to both.

In concluding that Bobich's 1992 offers of judgment were less favorable than the 1995 settlement, the court explained that, because the 1992 offers did not refer to liquidated damages, they were "unclear and ambiguous," and therefore were unenforceable. The court went on to conclude, alternatively, that if the 1992 offers were unambiguous, they included both unpaid overtime wages and liquidated damages. In reaching this conclusion, the court reasoned that

> there is no principled method by which liquidated damages can be considered to be separate claims [from overtime compensation claims], as they are derived from the statutory cause of action for violation of [the AWHA].... [T]he calculation and award of liquidated damages under the AWHA are automatic and mandatory once compensatory damages are found.

Adding the Hugheses' estimated pre–1992 attorney's fees to their actual awards of compensatory damages, liquidated damages, and prejudgment interest, the court determined

that the 1992 offers of judgment were inferior.

Bobich challenges the court's ruling. Emphasizing the distinction between "overtime compensation" and "liquidated damages," he argues that his 1992 offers of judgment unambiguously covered *only* overtime compensation, thus clearly excluding liquidated damages. Bobich further argues that, for purposes of Rule 68, his unambiguous 1992 offers must be compared only to the Hugheses' actual awards for unpaid overtime wages, not to the total of their awards for both unpaid wages and liquidated damages. So calculated, the Hugheses' judgments are less favorable than Bobich's original offers.

The Hugheses respond by pointing to a letter that Bobich's attorney sent to their attorney in 1995, along with Bobich's second set of offers of judgment. The letter estimated that, with prejudgment interest and attorney's fees added to the 1995 offers of judgment, "the total value of this offer is $50,000.00 to $60,000.00." According to the Hugheses, this letter implicitly acknowledged their right to receive reasonable attorney's fees if they settled. The Hugheses assert that they relied on this representation in agreeing to settle. They argue that Bobich is estopped from arguing that the 1992 offers exceeded the 1995 settlement and that his current position breaches the covenant of good faith and fair dealing implied in the parties' settlement contract.

The trial court reached the correct conclusion. Each 1992 offer stated that Bobich would "allow entry of judgment ... as to [the] claims for overtime compensation in the amount of [$10,000 for Alvie; $20,000 for Wanda], inclusive of all costs, interests and

---

1. Alaska Civil Rule 68, governing offers of judgment, provides in part that when the final court judgment is not more favorable to the offeree than the offer was,

   if the offeree is the party making the claim ... the offeree must pay the ... attorney's fees incurred after the making of the offer (as would be calculated under Civil Rule[] ... 82 if the offeror were the prevailing party). The offeree may not be awarded costs or attorney's fees incurred after the making of the offer. Alaska R. Civ. P. 68(b)(1).

2. AS 23.10.110(a) formerly provided that an employer who violated the AWHA's overtime provision was "liable to an employee affected in the

amount of ... unpaid overtime compensation ... and in an additional equal amount as liquidated damages." The statute was amended as of 1995 to provide that, if an employer proves good faith, the court has discretion to reduce or not award liquidated damages. *See* AS 23.10.110(a), (d). As the Hugheses ended their employment before 1995, former AS 23.10.110 applies to their claims. *See* ch. 37, § 4, SLA 1995.

3. Each also received prejudgment interest on the compensatory portion of the award. Alvie's compensatory and liquidated damages plus prejudgment interest totaled $7,476.62, and Wanda's totaled $22,429.85.

attorneys' fees." Under former AS 23.10.110(a), awards of liquidated damages were mandatory once an employer was found liable for compensatory damages. Since an employee's successful claim for overtime compensation always led to a liquidated damages award, the original offers' proposal to enter judgment on "claims for overtime compensation ... inclusive of all costs, interests and attorneys' fees" could most plausibly be read to include liquidated damages.

But given the offers' silence as to liquidated damages, it is perhaps arguable that they might be read to exclude liquidated damages. If such a reading is possible, the offers are ambiguous and, therefore, unenforceable.

If the offers are read in light of available extrinsic evidence and applicable case law, their facial ambiguity must be resolved in favor of the Hugheses. In *Davis v. Chism*, 513 P.2d 475, 482 (Alaska 1973), we held that "an offer of judgment that specifies only a total sum must be construed as including the defendant's assessment of all of the damages that [the] plaintiff is entitled to." In adopting this rule of construction in *Davis*, we emphasized that "[b]y our holding, some certainty in the operation of Rule 68 will be achieved." *Id.* Cases cited by Bobich for a contrary construction of the 1992 offers are not persuasive. For example, *LaPerriere v. Shrum*, 721 P.2d 630 (Alaska 1986), involved a dispute over an accepted offer, made pursuant to AS 09.30.065, to "have judgment entered ... in the amount of Ten Thousand Dollars ($10,000)." *Id.* at 633. After holding that an offer under AS 09.30.065 should be interpreted according to our cases regarding Rule 68 offers, we reversed the superior court's ruling that the offer included costs and attorney's fees, and held that the court should have awarded the LaPerrieres costs and attorney's fees in addition to the offer amount of $10,000. *See id.* at 633–35.

Bobich interprets *LaPerriere* to support his assertion that, as his offers did not specifically mention the mandatory liquidated damages awards, they did not include these awards. We based the holding in *LaPerriere* upon our observation in *Davis* that, under Rule 68, costs and attorney's fees should normally be added to the amount in the offer of judgment. *See LaPerriere*, 721 P.2d at

633–35 (citing *Davis*, 513 P.2d at 480, 482 n. 6). But an award of liquidated damages under AS 23.10.110 is distinct from awards of attorney's fees and costs. Like an award of overtime compensation, it relates to the substantive aspects of the employee's claim. While Rule 68 specifically provides that "costs then accrued" shall be added to the amount in the offer of judgment, *see Davis*, 513 P.2d at 480, and while we found in *Davis* that attorney's fees should be treated similarly, *see id.* at 482 n. 6, nothing in Rule 68 implies that mandatory awards of liquidated damages should also be automatically added on to offers of judgment. Under *Davis*, the 1992 offers must be construed to include "all of the damages that [the Hugheses were] entitled to." *Id.*

■ For parallel reasons, we also agree with the superior court that, for purposes of Rule 68, the Hugheses' actual award of liquidated damages must be added to their award for overtime wages. Under Rule 68(b), the offer must be compared to "the judgment finally rendered by the court." The "judgment finally rendered" includes the jury verdict (or, in this case, the court-awarded recovery), plus the prejudgment interest, attorney's fees, and costs incurred prior to the offer. *See Farnsworth v. Steiner*, 601 P.2d 266, 269 n. 4 (Alaska 1979). Though Bobich purports to base his calculations upon *Farnsworth*, he does not adequately justify his failure to include the Hugheses' liquidated-damage awards in his figures. He cites *Grow v. Ruggles*, 860 P.2d 1225 (Alaska 1993), as supporting his assertion that "the trial court was required to ignore the amount of liquidated damages and compare the amount of overtime actually recovered to the amount of overtime offered." But *Grow* does not support this proposition. *See id.* at 1227–28. As the superior court noted, since the Hugheses' final judgments include liquidated damages, these damages must be included in the Rule 68 calculation.

## III. THE HUGHESES' CROSS-APPEAL

### A. The Court Did Not Abuse Its Discretion in Awarding Attorney's Fees to the Hugheses.

■ The Hugheses object to the court's failure to award the attorney's fees they re-

quested. We will reverse an attorney's fee award only if the trial court abused its discretion. *See Mount Juneau Enters., Inc. v. Juneau Empire,* 891 P.2d 829, 834 (Alaska 1995). An abuse of discretion exists if the fee award is arbitrary, capricious, manifestly unreasonable, or based upon an improper motive. *See Hughes v. Foster Wheeler Co.,* 932 P.2d 784, 793 (Alaska 1997); *In re Soldotna Air Crash Litigation,* 835 P.2d 1215, 1220 n. 7 (Alaska 1992).

Alaska Statute 23.10.110 controls the award of attorney's fees in overtime-compensation cases under the AWHA. *See Schorr v. Frontier Transp. Co.,* 942 P.2d 418, 419–20 (Alaska 1997). Former AS 23.10.110(c), which applies here,[4] provided that "[t]he court in an action brought under this section shall, in addition to a judgment awarded to the plaintiff, allow costs of the action and reasonable attorney fees to be paid by the defendant."

On prior occasions we have emphasized that this statute's requirement of full reasonable attorney's fee awards ordinarily trumps Alaska Civil Rule 82's provision authorizing partial fees for prevailing parties: "[W]hen interpreting a state statute that expressly calls for an award of reasonable attorney's fees to successful plaintiffs, we have held that full fees should be awarded to claimants as long as those fees are reasonable." *Bobich v. Stewart,* 843 P.2d at 1237.[5]

The Hugheses requested an enhanced, or "lodestar," fee award. Their billing records showed 420.75 hours of work at an hourly rate of $150, for a total of $62,857.50. The court ruled that an enhanced fee was inappropriate because their attorney had unnecessarily complicated the case. The court concluded that the Hugheses should receive "substantial fees" for their litigation of the wage claim and defense against the counterclaims, issues on which they prevailed. The court multiplied the hours spent on these

issues by $150 (which the court found was a reasonable rate), and eliminated "billings that are too vague to allow a fair determination that they were reasonably incurred or incurred in connection with the Hugheses' lawsuit." This yielded $57,337.50. The court awarded one-half of this amount to Wanda, and one-quarter to Alvie. The reduced award to Alvie reflected a deduction for Alvie's separate settlement of his medical-benefits claim, which built in a $5000 sum for attorney's fees. The court then further reduced each of these awards by fifteen percent to account for "overzealous" behavior by the Hugheses' attorney and for time that the attorney spent duplicatively or wastefully, but that the court could not identify precisely from the vague billing records.

The Hugheses first assert that the court abused its discretion in reducing their award to take account of Alvie's medical benefits claim. The Hugheses state that, in the billing records they submitted to the court, they "attempted to subtract their fees expended in prosecuting the 'medical claim.'" While conceding that they "may have inadvertently left in some hours" in their billings, they assert that "that is not a basis for a fifty percent (50%) deduction." But the court did not reduce the Hugheses' billings by fifty percent on account of Alvie's medical claim. Rather, it apportioned half the billings to Wanda, half to Alive, and reduced Alvie's half by fifty percent, which amounts to a twenty-five percent reduction. Before ordering the reduction, the court carefully considered the billing records, which it expressly described as vague. The court also considered Bobich's objection to the Hugheses' billings, in which Bobich identified numerous billings that were unrelated to the overtime claims. We conclude that the court did not abuse its discretion in finding that the billings included time spent on Alvie's medical claims, for which he had already been compensated. We further

4. Former AS 23.10.110 governs the Hugheses' case, as they ended their employment before the 1995 amendments to AS 23.10.110 took effect. *See* ch. 37, § 4, SLA 1995.

5. We noted in *Bobich v. Stewart* that former AS 23.10.110(c) is designed to "encourage employees to press wage-and-hour claims." *Id.* at 1238 n. 9. *See also Grimes v. Kinney Shoe Corp.,* 938 P.2d at 999–1001 (interpreting former AS 23.10.110(c); analogizing to *Whaley v. Alaska Workers' Compensation Bd.,* 648 P.2d 955, 959–60 (Alaska 1982), which held that the statute awarding attorney's fees in worker's compensation cases "is to be liberally construed in favor of the employee").

conclude that the court did not abuse its discretion in reducing Alvie's award to prevent double compensation.

■ The Hugheses next object to the court's additional fifteen-percent reduction reflecting the Hugheses' attorney's role in unreasonably complicating the litigation. In ordering this reduction, the court observed that Bobich's behavior was inappropriate as well; the court stated that the unnecessary

> complexity ... was created by both parties.... [T]he defendants' conduct in this case was on a substantial number of occasions inappropriate and blameworthy.... Thus, deterrence of defendants' unlawful compensation practices and unreasonably aggressive litigation tactics is a factor to be considered here in determining what was a reasonable expenditure of fees under the circumstances.

The court also observed that the Hugheses' case had been dismissed for discovery violations committed by their attorney and that, although the dismissal had been reversed, their attorney "was severely criticized for his conduct ... by both [Superior Court] Judge Johnstone and the Supreme Court. Judge Johnstone ultimately issued a severe monetary sanction against him for his inappropriate conduct."

The Hugheses now complain that the trial court penalized them, but "never once punished the defendants." They also complain that the fifteen-percent reduction amounts to an improper duplicative penalty for conduct that Judge Johnstone had already punished.

We are unpersuaded by these arguments. The Hugheses were entitled to full attorney's fees only "as long as those fees [were] reasonable." *Bobich v. Stewart,* 843 P.2d at 1237. Although the court did not itemize its fifteen-percent reduction, it expressly said that the reduction reflected billings that it had found were not actually reasonable. The Hugheses have failed to show that the fifteen-percent figure adopted below is "arbitrary, capricious, manifestly unreasonable, or

the result of an improper motive." *Hughes v. Foster Wheeler Co.,* 932 P.2d at 793. Moreover, because the reduction represents unreasonable fees, it is not a penalty. The Hugheses' complaints of dual and discriminatory punishment are therefore unfounded. Although the court might have more clearly explained the fifteen-percent reduction, *see Bobich v. Stewart,* 843 P.2d at 1237–38, our review of the record convinces us that it did not abuse its discretion in making the attorney's fee award.

B. *The Court Did Not Err in Changing the Date of Judgment.*

■ The Hugheses lastly assert that the court originally entered final judgment on October 30, 1995, but then changed the date of the judgment to March 7, 1996, thereby depriving them of several months of interest.[6] They argue that this violates Alaska Civil Rule 58.1(a), which provides that "judgments become effective the date they are entered" and that a judgment's date of entry is normally "the date it is signed."[7]

But the Hugheses' argument on this point is inadequate either to preserve the point on appeal or to persuade us that any error was committed. They do not contend that prejudgment interest was calculated only up to October 30, 1995, or make any other argument of consequence. Their cursory argument results in a waiver of this aspect of their claim. *See Adamson v. University of Alaska,* 819 P.2d 886, 889 n. 3 (Alaska 1991).

IV. *CONCLUSION*

We AFFIRM the superior court's award of attorney's fees and final judgment.

---

**6.** Although the record contains no clear explanation for the disputed date of judgment, it appears that the judgment originally bore the date of October 30, 1995, and that this date was altered on March 7, 1996, when attorney's fees were added to the judgment.

**7.** Alaska R. Civ. P. 58.1(a).