Patrick J. BLISS, JR., and Barbara
J. Bliss, Appellants and Cross–
Appellees,

v.

Matthew BOBICH, Grace Black, Diane
Black–smith, David Richards, Craig
Smith, and Linda Bobich, individually
and as partners in ABC Partnership,
d/b/a Publix Storage; ABC Partnership
d/b/a Publix Storage; ABC Partnership;
Matthew Bobich, David Richards, Diane
Black–Smith, and Craig Smith, individu-
ally and as partners in Dimond Self–
Storage, a/k/a Dimond Mini Storage; Di-
mond Mini Storage; Dimond Self–Stor-
age Partnership; Matthew Bobich,
Grace Black, Diane Black–Smith, David
Richards, and Craig Smith, individually
and as partners in ABC Investment
Group, Inc., a/k/a Dimond Mini Storage;
ABC Investment Group, Inc.; Matthew
Bobich and Linda Bobich, d/b/a MBS
Properties, Inc.; and MBS Properties,
Inc., d/b/a International Moving & Stor-
age, Inc., Appellees and Cross–Appel-
lants.

Nos. S–7477, S–7517, S–7518.

Supreme Court of Alaska.

Nov. 6, 1998.

Rehearing Denied Feb. 17, 1998.

Kenneth W. Legacki, Anchorage, for Appellants and Cross–Appellees.

Darryl Thompson, Anchorage, and C.R. Kennelly, Stepovich, Kennelly & Stepovich, Anchorage, for Appellees and Cross–Appellants.

Before MATTHEWS, C.J., COMPTON, EASTAUGH, FABE and BRYNER, JJ.

## OPINION

BRYNER, Justice.

Patrick and Barbara Bliss, former employees at a storage facility owned by Matthew Bobich, sued Bobich for overtime violations and retaliatory harassment and discharge. The Blisses appeal, and Bobich cross-appeals. The parties raise numerous issues. As we conclude that the superior court erred in calculating Bobich's attorney's fees award, we remand on that issue. In all other aspects, we affirm.

## I. FACTS AND PROCEEDINGS

Bobich, a partner in Dimond Mini Storage in Anchorage, hired the Blisses as managers of the storage facility on August 15, 1988. The Blisses were hired to work for the storage facility's "gate hours"—the hours when it was open. These were initially eleven hours per day; in February 1989, they were reduced to ten hours per day. Bobich treated the Blisses as administrative employees who were exempt from overtime compensation. Each of the Blisses was initially paid a monthly salary of $1100. In October 1989, each received a salary increase to $1300 a month; in May 1990, each received an increase to $1400 a month.

In 1988, the same year that the Blisses began working for Bobich, Sharon and Jimmie Stewart, former managers at Dimond Mini Storage, sued Bobich and his business partners (collectively, Bobich) for unpaid overtime wages under the Alaska Wage and Hour Act. During the 1990 trial of the Stewarts' case, Bobich contended that, because the storage facility employed fewer than four workers, the AWHA's overtime compensation provisions did not apply to its employees. In December 1990, the jury rejected this defense and found that Bobich owed the Stewarts overtime wages. In 1992, this court sustained that verdict. See Bobich v. Stewart, 843 P.2d 1232 (Alaska 1992).

In June 1991, in response to the jury verdict in the Stewarts' case, Bobich calculated the overtime that the Blisses had accrued during their employment since August 1988. According to Bobich's calculations, he owed Patrick $2004.50 in overtime wages, and Barbara owed him $146.48. On advice from his attorneys, Bobich also began to pay the Blisses on an hourly basis.

Also in June, Alvie and Wanda Hughes, former employees at Publix Storage, another storage facility in which Bobich had a partnership interest, sued Bobich for unpaid overtime wages. On September 18, the Hugheses moved to add the Blisses as plaintiffs in their suit. Bobich learned of the Blisses' claim in late September. On January 15, 1992, he fired them.

The Blisses amended their complaint to add claims of retaliatory discharge. Bobich denied the claims and filed several counterclaims, alleging that the Blisses had damaged his business and reputation, converted business property, and breached their duty of good faith and fair dealing. The parties eventually stipulated to dismiss these counterclaims.

In August 1992, the superior court dismissed the Hugheses' suit due to willful violations of its discovery orders. We reversed the dismissal in 1994 and remanded the Hugheses' case. See Hughes v. Bobich, 875 P.2d 749, 756 (Alaska 1994). By then the Blisses' case had reached an advanced stage of litigation; the superior court declined to reconsolidate the suits.

In 1994, the court allowed the Blisses to file an amended complaint to add as additional defendants other businesses owned by Bobich as well as Bobich's partners in those other businesses. The Blisses' final amended

complaint alleged violations of both the federal Fair Labor Standards Act of 1938[1] and the AWHA.[2] The amended complaint also claimed that Bobich had willfully failed to pay overtime wages and had harassed and discharged the Blisses in retaliation for their exercise of their statutory rights. By adding this claim of willfulness, the Blisses evidently hoped to extend their potential period of recovery for overtime damages. Without proof of willfulness, both the AWHA and the FLSA allowed the Blisses to recover overtime damages only for the two years immediately preceding the filing of their overtime claims. *See* 29 U.S.C. § 255 (1985); AS 23.10.130. But upon proof of a willful failure to pay overtime, the FLSA allows overtime damages reaching three years back from the time of filing. *See* 29 U.S.C. § 255(a).

Bobich made offers of judgment to the Blisses on their overtime claims in 1992 and again in 1995. They rejected the offers. The Blisses' jury trial began on April 5, 1995, before Superior Court Judge Brian C. Shortell. At the close of the evidence, the court directed verdicts for the Blisses, ruling that they were not exempt from overtime wages and that their salaries should be considered compensation for forty hours of work per week. The court also directed a verdict against the Blisses on their claim that Bobich's failure to pay overtime was willful.

These rulings had the effect of holding Bobich liable for overtime wages but limiting the Blisses' overtime claims to the two-year time limit permitted under the AWHA; it thereby precluded the Blisses from seeking the third year of overtime damages that they would have been permitted under the FLSA's provision governing willful overtime violations. The parties agreed that the only remaining issue on the Blisses' overtime claims was the precise amount of the unpaid wages that Bobich owed; because the parties agreed on the total number of hours that the Blisses had actually worked, they agreed that the remaining determination of damages in-volved a mathematical calculation that the court could perform without the jury.

This left only the Blisses' retaliatory discharge claims for the jury. The jury failed to reach a verdict and was excused on April 21, 1995. A second jury trial began in July 1995, culminating in a verdict that Bobich had not harassed or fired the Blisses in retaliation for their overtime claims.

After calculating the Blisses' unpaid overtime damages, the court awarded attorney's fees to the Blisses on their overtime claims and to Bobich on the retaliatory discharge claims. It entered a net judgment for the Blisses.

The Blisses appeal; Bobich cross-appeals.

## II. *THE BLISSES' APPEAL*

A. *The Court Did Not Abuse Its Discretion in Excluding Evidence of Bobich's Prior Overtime Violations and of Bobich's Dealings with His Attorneys.*

Shortly before trial, Bobich filed a motion for a protective order, seeking to bar the Blisses from introducing evidence that Bobich had been involved in prior overtime violation cases and that he had retained several different attorneys in those cases. The court deferred ruling on the ultimate admissibility of this evidence, ruling instead that the Blisses would be barred from divulging any of it to the jury "before an out of the presence of the jury ruling is obtained." The court went on to specify that the Blisses were free to "request out of the presence hearings as to any of the evidence precluded. [The Blisses] must produce the witnesses at the hearing(s) so their specific offers of proof may be heard."

The Blisses complain that the court erred in not permitting them to introduce this evidence.[3] They claim that they were "precluded by the court from cross-examining and probing into [Bobich's] alleged good

---

1. 29 U.S.C. §§ 201–19 (1978 & Supp.1998).

2. AS 23.10.050–.150.

3. We examine a trial court's decisions to admit or exclude evidence for abuse of discretion. *See Buster v. Gale,* 866 P.2d 837, 841 n. 9 (Alaska 1994). We will reverse only " 'when we are left with a definite and firm conviction, after reviewing the whole record, that the trial court erred in its ruling.' " *Id.* (quoting *Dura Corp. v. Harned,* 703 P.2d 396, 409 (Alaska 1985)).

faith" and that they were "den[ied] ... the opportunity to show [that] Bobich's surprise at being sued was feigned." They argue that the court's ruling was particularly prejudicial because Bobich expressly claimed good faith compliance with the law and selectively referred to advice that he had received from his attorneys.

This claim is unpersuasive. In arguing that the trial court erroneously excluded their proposed evidence, the Blisses focus primarily on the pretrial order itself. But they are mistaken in claiming that the order excluded evidence. It excluded nothing categorically. Rather, it temporized: it protected against jury prejudice by precluding mention of the evidence to the jury until its admissibility was determined; but at the same time it allowed the Blisses to make specific offers of proof on an issue-by-issue basis when they actually sought to admit their evidence. This approach seems eminently sensible. We find no abuse of discretion.

The Blisses also maintain that they pressed for admission of the disputed evidence throughout their two trials but were constantly thwarted in their efforts. Yet they provide no meaningful discussion of the court's specific rulings excluding proffered evidence and fail to demonstrate that any particular ruling amounted to an abuse of discretion. Our own review of the record of both trials reveals few instances in which the Blisses even arguably complied with the protective order's requirement of a specific offer of proof. We find no specific instance of arguable compliance in which the court's response to their offer amounted to an abuse of discretion.

B. *The Court Did Not Err in Denying the Blisses Summary Judgment or Directed Verdicts on Their Retaliatory Discharge Claims.*

■ In both trials, the court denied summary judgment and declined to enter direct-ed verdicts for the Blisses on their retaliatory discharge claims. The Blisses argue that the court erred in failing to find as a matter of law that Bobich had harassed and discharged them in retaliation for their overtime complaints.[4] Their argument lacks merit.

■ As proof of retaliation, the Blisses point to evidence that, at one time, Bobich offered them a bonus to drop their demands for overtime wages and, at a later time, reduced their salaries. But Bobich presented evidence at trial indicating that he did not recall discussing the bonus. Moreover, it was undisputed that Bobich reduced the Blisses' pay before he became aware that they had filed complaints for unpaid overtime. Thus, the jury could have found that Bobich's conduct regarding the bonus and the pay reduction was not retaliatory.

■ The Blisses also point to evidence that Bobich unreasonably changed the conditions of their employment after they filed their overtime complaints and then discharged them for failing to comply with these unreasonable new conditions. According to the Blisses, this evidence conclusively established that Bobich set them up to fail. Yet the Blisses ignore that this evidence was disputed. Although the Blisses testified that they felt harassed by Bobich's actions, Bobich testified that he acted for legitimate business purposes, and not to harass the Blisses or to retaliate against them for filing overtime complaints.

■ Last, the Blisses claim that Bobich brought his counterclaims to harass them. But the Blisses stipulated to dismiss the counterclaims with the express understanding that they could not be mentioned at trial. Because their stipulation precluded inquiry

4. We consider the Blisses' appeal of the court's rulings regarding summary judgment and directed verdict under the same standard, since, if the court could not properly direct a verdict, neither could it properly grant summary judgment. *See Tripp, Inc. v. Kenneth A. Murray Ins., Inc.,* 600 P.2d 1361, 1363 (Alaska 1979). When reviewing a denial of a directed verdict, we determine whether the evidence, when viewed in the light most favorable to the nonmoving party, is such that reasonable jurors could not differ in their judgment. *See City of Whittier v. Whittier Fuel & Marine Corp.,* 577 P.2d 216, 220 (Alaska 1978). If reasonable jurors could reach different judgments on the issue, then the jury should decide the question. *See id.*

into Bobich's grounds for filing these counterclaims, the Blisses cannot now be heard to complain that Bobich filed them for a retaliatory purpose.

C. *The Court Did Not Err in Determining the Blisses' Overtime Damages.*

The Blisses contend that the trial court erred in awarding them damages for only two years, instead of three years, of unpaid overtime wages. They argue primarily that the court mistakenly ruled, as a matter of law, that Bobich's failure to pay overtime was not willful.

Bobich's willfulness was at issue because of the statute of limitations governing overtime claims under the FLSA. Under both the AWHA and the FSLA, recovery of unpaid overtime is limited to the two years immediately preceding the filing of a complaint. *See* 29 U.S.C. § 255 (1985); AS 23.10.130. But for a willful failure to pay overtime, the FLSA allows the claimant to recover an additional year of back pay. *See* 29 U.S.C. § 255(a). Thus, in directing a verdict against the Blisses on the issue of willfulness, the trial court precluded them from recovering a third year of unpaid overtime wages.

The Blisses summarily assert that they presented ample evidence of Bobich's willfulness; and they insist that they could have presented even more if the trial court had not erroneously precluded them from adducing evidence of Bobich's past overtime violations. We have already determined, however, that the trial court did not err in excluding evidence of prior violations.

■ Moreover, the evidence that the Blisses claim was erroneously excluded could not have affected the trial court's decision to grant directed verdicts on willfulness. The court granted the directed verdicts on willfulness only because it found no evidence that Bobich had acted willfully in failing to pay overtime wages during the third year preceding the Blisses' overtime wage complaint. Since the Blisses filed their overtime complaint in September 1991, their third year of overtime coverage extended back from September 1989 to September 1988. But the Blisses' evidence of Bobich's prior violations

related back no further than December 1990, the time of the verdict in the case of *Stewart v. Bobich.* Thus their entire third year of coverage predated the evidence of willfulness that the Blisses claim was wrongfully excluded. Even if admitted, this evidence could not have established Bobich's willfulness before the *Stewart v. Bobich* trial.

The Blisses have not challenged the trial court's specific finding that they offered insufficient evidence to prove willfulness in the third year prior to filing. Nor have they challenged the court's conclusion that the FLSA requires such proof. To the extent that the Blisses develop their argument concerning the sufficiency of the evidence on willfulness, they focus on evidence relating to events occurring no earlier than December 1990—evidence, that is, tending to show willfulness after the third year of coverage.

■ We find no error in the court's assessment of the lack of evidence that Bobich acted willfully between September 1988 and September 1989. We also find no plain error in the court's tacit legal premise that proof of willfulness had to relate specifically to this third year of coverage. We thus conclude that the directed verdicts on willfulness must stand. The Blisses advance two other theories to support a third year of damages. Citing AS 09.10.200, they theorize that, by signing "payroll recap" sheets in early September 1991 acknowledging unpaid overtime wages extending back to the beginning of their terms of employment, Bobich somehow removed this case from the AWHA and FLSA statutes of limitation. And citing AS 23.05.140, which entitles all terminated workers to be paid in full for back wages within three days of termination, the Blisses reason that they became entitled to their full unpaid overtime wages upon termination, regardless of the AWHA's statute of limitation. These claims are both meritless. Because the Blisses pursued their overtime claims under the FLSA and the AWHA, the specific statutes of limitation set out in those acts governed their causes of action. *See Quinn v. Alaska State Employees Ass'n,* 944 P.2d 468, 472 (Alaska 1997).

### D. The Court Did Not Err in Accepting Bobich's, Rather Than the Blisses', Version of the Blisses' Total Overtime Hours.

At trial, the parties stipulated that two of the Blisses' exhibits, Exhibits 10 and 11, accurately represented the hours that the Blisses had worked. The court calculated the Blisses' overtime damages on the basis of these stipulated hours. The Blisses now contend that these exhibits did not show all of their hours. They argue that they meant to stipulate only that Exhibits 10 and 11 were accurate, not that they were complete. They claim that the court "erroneously accepted the defendants' version of the time owed, rather than the plaintiffs." Our review of the record convinces us that this argument is frivolous. We find no error.

### E. The Court Did Not Abuse Its Discretion in Awarding Attorney's Fees to the Blisses.

■ The Blisses object to the court's award of attorney's fees on a number of grounds.[5]

The net attorney's fees award reflects a complicated process. The Blisses' attorney's billing records showed 1273.75 hours of work—most at an hourly rate of $150, part at a paralegal rate of $65—for a total of $182,817.50. The court first ruled that the Blisses deserved no fees for prosecuting their retaliatory discharge claims, since they did not prevail on them. Because the second trial dealt solely with these claims, the court reduced the Blisses' total fees by the amount that they had actually been billed for the second trial: $16,065. As to billings for work before the second trial, the court found "almost nothing" linking specific billings to specific claims. Unable to determine the hours that the Blisses' attorney had actually spent on the unsuccessful claims, the court decided to attribute half of all time billed prior to the second trial to work on the retaliatory dis-

charge claims. This reduction resulted in a fee of $83,376.50.

Beyond this, the court noted that "[b]oth sides overlitigated their claims and defenses, indulging in unnecessary motion practice and unnecessary and wasteful discovery practice." But the court then specified that "much of the complexity of this lawsuit was attributable to the Bliss[es'] counsel's unreasonable behavior, as the 42 court files and the . . . in-court record of this case clearly show," and that "the wasteful and vexatious conduct of plaintiffs' counsel must be accounted for." The court decided that the portion of the Blisses' fees attributable to their overtime claims should be reduced by twenty-five percent to account for their attorney's conduct. By this process the court determined that the Blisses' full reasonable attorney's fees on their overtime claims amounted to $62,533.

After determining the prevailing party fees for the Blisses, the court calculated Bobich's fees for prevailing on the retaliation claims and the other named defendants' fees for prevailing on the overtime claims. The court calculated the total prevailing party fees for all defendants to be $29,790.

Subtracting the defendants' prevailing party fees from the plaintiffs', the court arrived at a net attorney's fees award of $32,743 in favor of the Blisses. Although Judge Shortell observed that "I have seriously considered denying both motions for attorneys' fees because of the wasteful and vexatious behavior exhibited by both sides," he concluded "that consideration of all of the circumstances in this case warrants the sum awarded."

The Blisses assert that this net fee award violates case law and the public policy underlying the AWHA's provision for full reasonable attorney's fees. They also claim that their attorney handled the litigation reasonably in light of Bobich's vexatious tactics.

---

5. Trial courts have broad latitude in determining attorney's fees; we will reverse an attorney's fees award only if the court below abused its discretion. See Mount Juneau Enters., Inc. v. Juneau Empire, 891 P.2d 829, 834 (Alaska 1995). An abuse of discretion exists only if the fee award is arbitrary, capricious, manifestly unreasonable, or based upon an improper motive. See Hughes v. Foster Wheeler Co., 932 P.2d 784, 793 (Alaska 1997); In re Soldotna Air Crash Litig., 835 P.2d 1215, 1220 n. 7 (Alaska 1992).

■ The Blisses advance several specific arguments. We find no merit to their contention that, by declaring Bobich the prevailing party on the retaliatory discharge claims, and refusing to award the Blisses any fees for their unsuccessful efforts on these claims, the court violated the policy of the AWHA. Former AS 23.10.110(c), which governed this case, guaranteed the Blisses an award of reasonable attorney's fees for prevailing on their claims for unpaid overtime wages. We have held that this subsection entitled an employee to full reasonable fees for prevailing on an overtime claim, noting that "[t]he objective of AS 23.10.110 ... is to encourage employees to press wage-and-hour claims." *Bobich v. Stewart,* 843 P.2d at 1238 n. 9. However, the Blisses did not bring their retaliatory discharge claims under the AWHA; they brought them as common-law tort actions for lost wages, punitive damages, and emotional distress. Former AS 23.10.110(c) addresses attorney's fees for employees prevailing on wage claims; its purpose is not to subsidize excursions into tort claims. We have acknowledged that the AWHA's underlying policies prevent a prevailing employer in a wage-and-hour case from recovering attorney's fees under either former AS 23.10.110(c) or Civil Rule 82. *See Grimes v. Kinney Shoe Corp.,* 938 P.2d 997, 999–1001 (Alaska 1997). But the trial court's order did not award fees to Bobich on the overtime claims; rather, it awarded Bobich fees only on the Blisses' unsuccessful tort claims.

In cases governed by Rule 82 that involve multiple causes of action, "[w]e have consistently held that both the determination of 'prevailing party' status and the award of costs and fees are committed to the broad discretion of the trial court." *Tobeluk v. Lind,* 589 P.2d 873, 878 (Alaska 1979). We have affirmed a decision in which the trial court came to the "sound conclusion that each side should bear its own costs since each side prevailed in substantial areas of [the] litigation." *Oaksmith v. Brusich,* 774 P.2d 191, 202 (Alaska 1989). And in another case we found "no abuse of discretion in the superior court declaring the case a 'wash' and ordering each party to bear his own

costs and fees." *Pavone v. Pavone,* 860 P.2d 1228, 1233 (Alaska 1993).

■ We see no need to apply a different rule to cases involving mixed causes of action, some governed by Rule 82's attorney's fees provisions and some by the AWHA's. The determination of prevailing party status in such cases remains a matter for sound trial court discretion. In these particular circumstances—where the Blisses' overtime claims were resolved before their case was submitted to the jury in the first trial, and their retaliatory discharge claims required a second trial—we find no abuse of discretion in the court's decision to split prevailing party status for the divergent claims.

■ All but one of the Blisses' remaining attorney's fees arguments are meritless. The Blisses complain that the court's award punished them for overlitigation and rewarded Bobich for vexatiousness. Yet a careful reading of the attorney's fees order establishes that its purpose and effect were not to punish or reward any party's conduct, but rather to determine, as accurately as possible, the full reasonable fees attributable to the Blisses' overtime claims. *Cf. Bobich v. Hughes,* 965 P.2d 1196, 1199 (Alaska 1998). The Blisses assert that the attorney's bills that they submitted should have been accepted as presumptively accurate and treated as binding on the court unless expressly rebutted by Bobich. This assertion is both legally unsupported and logically unsound. They also assert that Bobich never filed a timely application for attorney's fees, and that his recompiled billings were invalid. But the record fails to support the former assertion, and the Blisses cite no legal authority to support the latter. They further insist that the court erred in failing to hold a hearing on the accuracy of their billings. Yet the Blisses offered no additional information concerning their billings and did not request a hearing; no hearing was required under the circumstances. The Blisses also contend that the court erred in deducting Bobich's fees from their own to arrive at a net award of fees for the entire case; they complain that this in effect took money "out of the plaintiffs' attorney's pocket." But in guarding his own pocket instead of the Blisses',

their attorney actually argues against his clients; moreover, the argument ignores that fees are not awarded directly to a prevailing attorney; they are instead part of the judgment awarded to the prevailing party.

The Blisses' final attorney's fees argument, however, has merit. The Blisses contend that the court erred in denying fees for the time their attorney spent preparing their fee application. This argument finds support in two recent cases. *See Singh v. State Farm Mut. Auto. Ins. Co.*, 860 P.2d 1193, 1203 (Alaska 1993), and *Bobich v. Stewart*, 843 P.2d 1232, 1237 (Alaska 1992) (both indicating that prevailing party fees in cases where full rather than partial compensation for attorney's fees is called for should include time reasonably necessary to compile an affidavit detailing an attorney's time on the case). As we hold later in this opinion, a remand will in any event be necessary to allow the trial court to reconsider Bobich's attorney's fees; on remand, the court should also reconsider, in light of *Singh* and *Bobich v. Stewart*, its order denying the Blisses' request for fees covering the time their attorney spent preparing their fee application.

## III. *BOBICH'S CROSS–APPEAL*

### A. *The Court Did Not Err in Failing to Enforce Bobich's 1992 Offers of Judgment on the Overtime Claims.*

Bobich argues that the court erred in refusing to enforce Bobich's 1992 offers of judgment on the Blisses' overtime claims, which provided, as to each plaintiff, that "[d]efendants, pursuant to Rule 68 of the Alaska Rules of Civil Procedure, hereby offer[ ] to allow entry of judgment in favor of plaintiff . . . as to [the] claim for overtime compensation, in the amount of $20,000.00 . . . inclusive of all costs, interest and attorneys' fees." Both of the Blisses rejected Bobich's offers.

The superior court found these offers unenforceable for essentially the same reasons it refused to enforce similarly worded offers in the companion case of *Bobich v. Hughes.* *See Bobich v. Hughes*, 965 P.2d 1196, 1198 (Alaska 1998). And Bobich's arguments here are essentially identical to those we rejected in *Bobich v. Hughes.* *See id.* at 1198–99. Our ruling in *Bobich v. Hughes* is dispositive of Bobich's present claim.

### B. *The Court Abused Its Discretion in Calculating the Defendants' Attorney's Fees.*

In 1992, Bobich made offers of judgment on the retaliatory discharge claims. In 1995, Bobich made offers on the overtime claims. The Blisses rejected these offers. On appeal, Bobich objects to the trial court's calculation of the defendants' prevailing party attorney's fees on the retaliatory discharge claims, arguing that the court abused its discretion in failing to consider, as a basis for enhancing fees under Civil Rule 82(b)(3), the Blisses' rejection of the offers. But in *Fairbanks North Star Borough v. Lakeview Enterprises, Inc.*, 897 P.2d 47, 62 (Alaska 1995), we expressly left such determinations to the trial court's discretion; we concluded that "when a trial court awards fees it may, but need not, take into account [under Rule 82(b)(3) ] the existence of an unaccepted Rule 68 offer if the claimant-offeree fails to better the offer." Bobich fails to persuade us that the court abused its discretion in declining to take into account the unaccepted offers.

Bobich next disputes the court's calculation of his fees in relation to the fees covering the additional defendants named in the Blisses' amended complaint. The Blisses brought the additional defendants into the case in an effort to expand the size of Bobich's business enterprise for purposes of establishing an alternative basis for FLSA jurisdiction over their overtime claims.[6] Before the first trial,

---

**6.** The FLSA originally contained only traditional coverage, which applied to employees who were "engaged in [interstate] commerce or in the production of goods for [interstate] commerce." 29 U.S.C. § 207(a) (amended 1961); 29 U.S.C. § 203(b) (amended 1961). In 1961, Congress expanded the FLSA by creating enterprise coverage. While traditional coverage focuses on the individual employee's duties, enterprise coverage focuses on the employer's business. "Enterprise," under the FLSA, refers to "related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities whether performed in one or more establishments." 29 U.S.C.A. § 203(r)(1)

the court granted summary judgment for the additional defendants on the retaliatory discharge claims, ruling that they were not the Blisses' employers. After the Blisses had presented their evidence at the first trial, the court directed verdicts in favor of the additional defendants on the overtime claims, ruling that the Blisses had failed to prove enterprise liability under the FLSA.

■■■ After the second trial, the additional defendants submitted $58,181 in attorney billings and moved for fees of $29,090.50—half the amount of their billings—for prevailing against the Blisses on the overtime claims.[7] Bobich, on his own behalf, submitted total billings of $118,694 for defending against the retaliatory discharge claims. He asked for an award of $75,150.58, or 65 percent of his billings.

In determining the amount of fees to award Bobich and the additional defendants, the court assumed that Bobich's $118,694 in billings encompassed the total fees for both Bobich and the additional defendants. Thus, having attributed $58,181 in fees to the additional defendants, the court deducted this amount from the $118,694 in billings that Bobich had submitted, and reached $60,513 as the total amount of fees incurred by Bobich in defense of the retaliatory discharge claims. The court awarded Bobich fees based on this amount.

Bobich maintains that the court's calculations are mistaken, since his own fees totaled $118,694 and the other defendants incurred $58,181 in addition to that amount. Thus, according to Bobich, the starting point for his own fee award should have been $118,694.

Under Rule 82(b)(2)'s "with trial" schedule, the court should have awarded him 30 percent of this amount: $35,608.20.

Our review of Bobich's and the additional defendants' billing records convinces us that Bobich's argument has merit. The billings do not support the trial court's conclusion that the additional defendants' $58,181 in fees was included in Bobich's $118,694 in billings.

The defendants' records show three sets of bills: one from attorney Darryl Thompson for representing the additional defendants from January 1994 through April 1995, with fees of $58,181; one from the firm of Stepovich, Kennelly & Stepovich for representing Bobich from January 1992 through May 1994, with fees of $75,238.50; and one from Darryl Thompson, who took over the representation of Bobich from Stepovich in May 1994 and billed through October 1995, charging fees of $43,455. The last two figures, when rounded off, add up to the $118,694 that Bobich claimed as his total fees.

Stepovich's bills do include a notation at the bottom of each page that says "Summary of Billings Re: Bliss, wrongful termination and dismissed defendants." But, as Bobich notes, Stepovich never represented the additional defendants. It appears that the "dismissed defendants" note simply refers to the fact that, as the billing notes reflect, the Stepovich attorneys met with Thompson early in 1994 to discuss Thompson's "representation of new defendants." Accordingly, we must vacate the fee award to Bobich and remand for recalculation.

---

(West Supp.1998). In order for a business to qualify as an enterprise, it must also be involved in interstate commerce, and have annual gross sales of a certain dollar amount. *See* 29 U.S.C.A. § 203(s)(1)(A)(i)–(ii) (West Supp.1998). *See generally* Mark A. Rothstein et al., *Employment Law* § 4.2, at 334–37 (1994).

7. The Blisses have not challenged the trial court's decision to award attorney's fees to the additional defendants for prevailing on the Blisses' overtime claims. In *Grimes v. Kinney Shoe Corp.*, 938 P.2d 997, 999–1001 (Alaska 1997), we held that an employer who prevails on an employee's AWHA claim may not be awarded prevailing party fees under Civil Rule 82. However, *Grimes* was published more than a year after the

court in the present case issued its attorney's fees order. More significantly, in the present case the court's decision to award attorney's fees to the additional defendants appears to have been based on the theory that they had never been the Blisses' employers and had been added as defendants only as a means of expanding the scope of Bobich's business enterprise in order to establish FLSA liability against him. *See supra* note 6 and accompanying text. In their crossmotion for attorney's fees, the defendants expressly argued this theory to the trial court as a basis for an award of fees for the overtime claims. Given these circumstances, we decline to find plain error in the award of fees to the additional defendants for prevailing on the overtime claims.

Another aspect of the fee award requires our consideration. The trial court relied on Civil Rule 82(b)(2)'s 20 percent "without trial" rate in awarding $11,636 in fees to the additional defendants; it relied on the rule's 30 percent "with trial" rate in awarding $18,154 in fees to Bobich. The additional defendants argue that, because they remained in the case until the conclusion of the evidence in the first trial, they should have been awarded attorney's fees at Rule 82(b)(2)'s "with trial" rate, under which they were presumptively entitled to 30 percent of their actual fees. We agree.

The Blisses' retaliation claims against the additional defendants were dismissed by pretrial summary judgment. But their overtime claims against these defendants were dismissed by a directed verdict that was entered after the Blisses presented their evidence at the first trial. Because these claims proceeded to trial, Rule 82(b)(2)'s "with trial" schedule must, in our view, be used as the starting point for determining the attorney's fees to be awarded for prevailing on those claims.

Of course, the trial court had discretion under Rule 82(b)(3) to adjust the presumptive award; in exercising this discretion, the court could have taken into account the fact that these claims were disposed of by directed verdict prior to reaching the jury. But before adjusting the presumptive recovery on this basis, the court would be required to "explain the reasons for the variation." Alaska R. Civ. P. 82(b)(3). Here, the court did not explain the award. On remand, the court must reconsider this aspect of its fee award.

### C. *Bobich's Contingent Arguments*

Bobich advances additional arguments in his cross-appeal for consideration only in the event of a reversal based on arguments advanced in the Blisses' direct appeal. Since we have rejected the Blisses' arguments, we need not consider Bobich's contingent cross-appeal points.

### IV. *CONCLUSION*

We REMAND so that the superior court can recalculate Bobich's attorney's fees award and reconsider the Blisses' award in light of *Singh* and *Bobich v. Stewart.* In all other aspects, we AFFIRM.