701 S.E.2d 116

Doris MICHAEL and Todd Battle, by His Next Friend, Doris Michael, and Kitrena Michael, Plaintiffs,

v.

APPALACHIAN HEATING, LLC, and State Auto Insurance Company, Defendants.

No. 35127.

Supreme Court of Appeals of West Virginia.

Submitted March 2, 2010.

Decided June 11, 2010.

Cynthia M. Ranson, J. Michael Ranson, Ranson Law Offices, PLLC, Charleston, WV, for Plaintiffs.

John R. Fowler, Anna B. Williams, Andrea M. King, John R. Fowler, PLLC, Charleston, WV, for Defendant, State Auto Insurance Company.

DAVIS, Chief Justice:

This matter comes before this Court upon a request from the Circuit Court of Kanawha County to answer a certified question asking whether the West Virginia Human Rights Act, W. Va.Code § 5–11–1, et seq., prohibits discrimination by a tortfeasor's insurer in the settlement of a property damage claim. We conclude that the Human Rights Act does prohibit such discrimination.

1. The Plaintiffs allege that they were displaced from their home for a period of approximately 113 days. For the week immediately following the fire, the Plaintiffs stayed with friends. Thereafter, they were provided another, apparently smaller and less desirable, apartment within South Park Village, where they resided until they were able to move back into their former apartment.

2. To the contrary, an exhibit contained in the record in this case titled "PROPERTY DAMAGE RELEASE," which was executed by plaintiff Kitrena Michael on August 30, 2007, states that she received $3,545.15 in settlement of her claims

## I.

## FACTUAL AND PROCEDURAL HISTORY

The facts underlying the instant action originated from the alleged negligence of Appalachian Heating, LLC (hereinafter referred to as "Appalachian Heating"). Appalachian Heating was hired by the Charleston–Kanawha County Housing Authority to repair and/or replace climate control units in South Park Village, a public housing development located in Charleston, West Virginia. The plaintiffs in this action are Doris Michael; her minor son, Todd Battle; and her adult daughter, Kitrena Michael (hereinafter collectively referred to as "the Plaintiffs"). The Plaintiffs, who are African American, resided together in an apartment located in South Park Village. On November 21, 2006, the apartment in which the Plaintiffs resided caught fire, allegedly due to negligence on the part of Appalachian Heating, causing a total loss of the Plaintiffs' personal property and rendering the apartment temporarily uninhabitable.[1] State Auto Insurance Co. (hereinafter referred to as "State Auto"), a defendant in this action, provided liability insurance coverage to Appalachian Heating.

Following the fire, State Auto settled the Plaintiffs' claims. In their brief to this Court, the Plaintiffs submit that "with the exception of one small stipend of $2,500.00 paid in December of 2006, Doris Michael was not provided with a penny to put her life back together." According to Kitrena Michael's amended complaint, State Auto placed "no value on the general damages associated with the total loss."[2] According to the amended complaint filed by Doris

against Appalachian Heating. In consideration for this payment, Kitrena Michael executed a release discharging Appalachian Heating

from any and all property damage claims which [Kitrena Michael] may now have or which may hereafter accrue on account of or in any way arise out of or result from any known or unknown, foreseen or unforeseen property damage and the consequences thereof related to or arising out of the fire which occurred on or about November 21, 2006....

State Auto asserts that Kitrena Michael was represented by counsel in negotiating this settlement.

Michael and Todd Battle, State Auto "placed a total value of Two Thousand Five Hundred Dollars ($2,500.00) on Doris Michael and Todd Battle's general damages associated with the total loss outlined herein." [3]

Thereafter, on December 6, 2007, the plaintiffs commenced the instant action by filing two separate complaints. One complaint was filed by Kitrena Michael,[4] and another was filed by Doris Michael and Todd Battle.[5] Both complaints alleged, *inter alia,*[6] that State Auto had violated the West Virginia Human Rights Act in settling their claims. Specifically, both complaints set out nearly identical allegations as follows:

32. That [State Auto] by and through its agents, employees and representatives ... failed to properly, fairly and reasonably evaluate, process and adjust the plaintiff[s'] fire loss claims because of the plaintiff[s'] race and the fact that they resides [sic] in public housing.

33. That [State Auto], by and through its agents, employees and representatives ... wrongfully denied the plaintiffs ... fair and reasonable compensation for the loss and damages arising out of the fire loss [they] sustained on November 21, 2006 because of plaintiffs' race and the fact that they reside in public housing.

34. That [State Auto], through its agents, employees and representatives ... committed the act of inferring and

informing the [plaintiffs] that the loss of [their] personal property and the commensurate damages arising there from [sic] virtually had no value because of [their] race and the fact that [they] resided in public housing.

35. That the express purpose and spirit of the West Virginia Act was clearly violated by the defendant, [State Auto,] and its agents, employees and representatives when it participated directly in excluding the plaintiffs from and/or refusing to extend to the plaintiffs the same opportunity and consideration when evaluating the plaintiffs' fire loss claims it extends to those persons not of African American descendent and those who do not reside in public housing.

36. That the express purpose of the West Virginia Act was clearly violated by the defendant, [State Auto,] and its agents, employees and representatives when it acted as previously described herein and in such a way as to degrade the plaintiffs, to embarrass the plaintiffs and to cause the plaintiffs economic loss as set forth in 5–11–9(A) [sic] of the West Virginia Code.[7]

(Footnote added). State Auto filed a motion to dismiss pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure in each case, based upon State Auto's contention that the Plaintiffs are barred from bringing their Human Rights Act case by a

3. Contrary to this assertion, an exhibit contained in the record in this case titled "PROPERTY DAMAGE RELEASE," which was executed by plaintiff Doris Michael on September 12, 2007, states that she received $19,449.56 in settlement of her claims against Appalachian Heating. In consideration for this payment, Doris Michael executed a release discharging Appalachian Heating

from any and all property damage claims which [Doris Michael] may now have or which may hereafter accrue on account of or in any way arise out of or result from any known or unknown, foreseen or unforeseen property damage and the consequences thereof related to or arising out of the fire which occurred on or about November 21, 2006....

State Auto asserts that Doris Michael was represented by counsel in negotiating this settlement.

4. This action was styled *Katrina Michael v. Appalachian Heating, LLC, and State Auto Insurance Company,* and was designated as civil action no. 07–C–2616.

5. This action was styled *Doris Michael and Todd Battle, by His Next Friend, Doris Michael v. Appalachian Heating, LLC, and State Auto Insurance Company,* and was designated as civil action no. 07–C–2617.

6. No issues involving the Plaintiffs' claims against Appalachian Heating are involved in this certified question action.

7. This reference should have been to W. Va.Code § 5–11–9(7)(A) (1998) (Repl.Vol.2006).

provision of the West Virginia Unfair Trade Practices Act (hereinafter referred to as "the UTPA") that provides the only method for bringing a third-party action against an insurance company based upon its settlement practices. *See* W. Va.Code § 33–11–4a (2005) (Repl.Vol.2006). The actions were then consolidated by order of the circuit court entered on May 22, 2008.[8] By order entered December 1, 2008, the circuit court denied State Auto's motions to dismiss. After the denial, State Auto orally moved that a question be certified to this court pursuant to W. Va.Code § 58–5–2 (1998) (Repl.Vol.2005).[9] The circuit court granted the motion, and by agreed order entered April 23, 2009, the circuit court certified the following question:

> May a plaintiff present a cause of action against a tortfeasor's insurance carrier pursuant to the West Virginia Human Rights Act, West Virginia Code § 5–11–9 [ (7) ](A), when it is alleged that a tortfeasors' insurance carrier discriminated against the plaintiffs because they are African–American and reside in public housing?
>
> *Circuit Court: Yes.*

By order entered September 3, 2009, this Court accepted the certified question for review.

## II.

### STANDARD OF REVIEW

■ "The appellate standard of review of questions of law answered and certified by a circuit court is *de novo.*" Syl. pt. 1, *Gallapoo v. Wal–Mart Stores, Inc.*, 197 W.Va. 172, 475 S.E.2d 172 (1996). *Accord* Syl. pt. 1, *Robinson v. Pack*, 223 W.Va. 828, 679 S.E.2d 660 (2009); Syl. pt. 1, *Copier Word Processing Supply, Inc. v. WesBanco Bank, Inc.*, 220

W.Va. 39, 640 S.E.2d 102 (2006). Accordingly, we give plenary consideration to the legal issues that must be resolved to answer the question herein certified.

## III.

### DISCUSSION

■ Before we address the substantive issues raised in this certified question, we note that

> [w]hen a certified question is not framed so that this Court is able to fully address the law which is involved in the question, then this Court retains the power to reformulate questions certified to it under both the Uniform Certification of Questions of Law Act found in *W. Va.Code*, 51–1A–1, *et seq.* and *W. Va.Code*, 58–5–2 [ (1998) ], the statute relating to certified questions from a circuit court of this State to this Court.

Syl. pt. 3, *Kincaid v. Mangum*, 189 W.Va. 404, 432 S.E.2d 74 (1993). *See also* W. Va. Code § 51–1A–4 (1996) (Repl.Vol.2008) ("The Supreme Court of Appeals of West Virginia may reformulate a question certified to it."). In order to clarify the instant certified question and to fully address the relevant law, we exercise our authority to reformulate the question as follows:

> Does the West Virginia Human Rights Act prohibit discrimination by a tortfeasor's insurer in the settlement of a property damage claim asserted by a member of a protected class under the Act?

Summarizing the parties' arguments relating to the manner in which we should answer the certified question, we note that State Auto argues that the Plaintiffs' sole exclusive

---

**8.** The actions were consolidated under civil action no. 07–C–2616.

**9.** W. Va.Code § 58–5–2 (1998) (Repl.Vol.2005) states:

> Any question of law, including, but not limited to, questions arising upon the sufficiency of a summons or return of service, upon a challenge of the sufficiency of a pleading or the venue of the circuit court, upon the sufficiency of a motion for summary judgment where such motion is denied, or a motion for judgment on the pleadings, upon the jurisdiction of the cir-

cuit court of a person or subject matter, or upon failure to join an indispensable party, may, in the discretion of the circuit court in which it arises, be certified by it to the Supreme Court of Appeals for its decision, and further proceedings in the case stayed until such question shall have been decided and the decision thereof certified back. The procedure for processing questions certified pursuant to this section shall be governed by rules of appellate procedure promulgated by the Supreme Court of Appeals.

remedy for the conduct alleged against it is an administrative complaint with the Insurance Commissioner pursuant to the UTPA.[10]

State Auto contends that, under the UTPA, the Plaintiffs' sole remedy is to file an administrative complaint with the Insurance Commissioner.[11] In addition, State Auto submits that there is no common law cause of action for third-party claimants who allege discrimination by a tortfeasor's insurance company.[12] Additionally, State Auto argues that the rules of statutory construction support its interpretation of the relevant statutes. State Auto opines that, if this Court allows the instant action, it will open a flood of baseless litigation which the Legislature has already prohibited. According to State Auto, this action is simply a third-party bad faith claim disguised as a Human Rights claim.

The Plaintiffs respond that the West Virginia Human Rights Act, specifically W. Va. Code § 5–11–9(7)(A) (1998) (2006),[13] expressly prohibits discrimination based on race or the fact that a person resides in public housing. The Plaintiffs contend that State Auto did not give their fire loss claim the same opportunity and consideration when evaluating their loss as it extends to persons who are not African American and who do not reside in public housing. Thus, the Plaintiffs argue that State Auto violated the West Virginia Human Rights Act and their cause of action should stand. The Plaintiffs further assert that there is nothing in the UTPA that supports granting insurance companies immunity from the Human Rights Act.

Finally, the Plaintiffs assert that they do not seek remedy or relief under the UTPA, nor have they pled a common law cause of action as third-party claimants. Because

---

**10.** State Auto refers specifically to W. Va.Code § 33–11–4a(a) (2005) (Repl.Vol.2006), which states:

> A *third-party claimant may not bring a private cause of action or any other action* against any person *for an unfair claims settlement practice. A third-party claimant's sole remedy* against a person *for an unfair claims settlement practice* or the bad faith settlement of a claim *is the filing of an administrative complaint* with the commissioner in accordance with subsection (b) of this section. A third-party claimant may not include allegations of unfair claims settlement practices in any underlying litigation against an insured.

(Emphasis added). The term "third-party claimant" is defined as "any individual, corporation, association, partnership or any other legal entity asserting a claim against any individual, corporation, association, partnership or other legal entity insured under an insurance policy or insurance contract for the claim in question." W. Va.Code § 33–11–4a(j)(1).

**11.** State Auto also argues that the West Virginia Legislature has expressly prohibited unfair discrimination by insurance companies. It should be noted, however, that the provision relied upon by State Auto, W. Va.Code § 33–11–4(7) (2002) (Repl.Vol.2006), primarily pertains to the rates and premiums charged for insurance coverage. It does not pertain to settlement practices and, thus, is irrelevant to the instant question.

**12.** In support of this argument, State Auto cites *Elmore v. State Farm Mutual Automobile Insurance Co.*, 202 W.Va. 430, 434, 504 S.E.2d 893, 897 (1998), which states

> there is simply nothing to support a common law duty of good faith and fair dealing on the

part of insurance carriers toward third-party claimants. We therefore decline to expand our prior holdings regarding common law bad faith claims to allow third parties to bring an action against the insurance carrier of another.

**13.** W. Va.Code § 5–11–9(7) states:

> It shall be an unlawful discriminatory practice, unless based upon a bona fide occupational qualification, or except where based upon applicable security regulations established by the United States or the state of West Virginia or its agencies or political subdivisions:
>
> . . . .
>
> (7) For any person, employer, employment agency, labor organization, owner, real estate broker, real estate salesman or financial institution to:
>
> (A) Engage in any form of threats or reprisal, or to engage in, or hire, or conspire with others to commit acts or activities of any nature, the purpose of which is to harass, degrade, embarrass or cause physical harm or economic loss or to aid, abet, incite, compel or coerce any person to engage in any of the unlawful discriminatory practices defined in this section;
>
> (B) Willfully obstruct or prevent any person from complying with the provisions of this article, or to resist, prevent, impede or interfere with the commission or any of its members or representatives in the performance of a duty under this article; or
>
> (C) Engage in any form of reprisal or otherwise discriminate against any person because he or she has opposed any practices or acts forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article.

their complaint is void of any language that would give rise to a third-party cause of action, they contend that their claim is not barred by the UTPA.

The issue presently before this Court is one of first impression and requires us to consider West Virginia's Human Rights Act to ascertain whether W. Va.Code § 5–11–9(7)(A) prohibits discrimination in the settlement of a property damage claim, and whether the UTPA precludes a third-party action against an insurer brought under said statute.

■ At the outset of our analysis, we point out that "[t]he primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r,* 159 W.Va. 108, 219 S.E.2d 361 (1975). Nevertheless, this Court's authority to construe a statute is limited. "When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute." Syl. pt. 5, *State v. General Daniel Morgan Post No. 548, Veterans of Foreign Wars,* 144 W.Va. 137, 107 S.E.2d 353 (1959).

■ The particular provision of the Human Rights Act under which the plaintiffs have asserted their claims, W. Va.Code § 5–11–9(7)(A), is a plainly worded statute that clearly evidences the Legislature's intention. Thus, the statute may not be interpreted by this Court. " 'Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation.' " *Huffman v. Goals Coal Co.,* 223 W.Va. 724, 729, 679 S.E.2d 323, 328 (2009) (quoting Syl. pt. 2, *State v. Elder,* 152 W.Va. 571, 165 S.E.2d 108 (1968)). *See also* Syl. pt. 1, *Ohio County Comm'n v. Manchin,* 171 W.Va. 552, 301 S.E.2d 183 (1983) ("Judicial interpretation of a statute is warranted only if the statute is ambiguous and the initial step in such interpretative inquiry is to ascertain the legislative intent.").

W. Va.Code § 5–11–9(7)(A), under which the plaintiffs have asserted their claims, states:

It shall be an unlawful discriminatory practice, unless based upon a bona fide occupational qualification, or except where based upon applicable security regulations established by the United States or the state of West Virginia or its agencies or political subdivisions:

. . . .

(7) For any person, employer, employment agency, labor organization, owner, real estate broker, real estate salesman or financial institution to:

(A) Engage in any form of threats or reprisal, or to engage in, or hire, or conspire with others to commit acts or activities of any nature, the purpose of which is to harass, degrade, embarrass or cause physical harm or economic loss or to aid, abet, incite, compel or coerce any person to engage in any of the unlawful discriminatory practices defined in this section;

This provision utilizes the disjunctive term "or," to demonstrate that it sets out alternative means of violating the Human Rights Act. *See State v. Rummer,* 189 W.Va. 369, 377, 432 S.E.2d 39, 47 (1993) ("We have customarily stated that where the disjunctive 'or' is used, it ordinarily connotes an alternative between the two clauses it connects." (internal quotations and citations omitted)). Clearly, then, W. Va.Code § 5–11–9(7)(A) establishes three distinct causes of action under the Human Rights Act, making it an unlawful discriminatory practice "for any person, employer, employment agency, labor organization, owner, real estate broker, real estate salesman or financial institution to:" (1) "engage in any form of threats or reprisal," or; (2) "engage in, or hire, or conspire with others to commit acts or activities of any nature, the purpose of which is to harass, degrade, embarrass or cause physical harm or economic loss," or (3) "aid, abet, incite, compel or coerce any person to engage in any of the unlawful discriminatory practices defined in this section [ (W. Va.Code § 5–11–9) ]." W. Va.Code § 5–11–9(7)(A).

■ We note that W. Va.Code § 5–11–9(7)(A) appears to be an expansion of the

general policy declaration of the Human Rights Act found at W. Va.Code § 5–11–2 (1998) (Repl.Vol.2006).[14] Importantly, however, we observe that the policy declaration does not specifically nullify the application of W. Va.Code § 5–11–9(7)(A); therefore, it is not within the province of this Court to ignore the plain language of that code section. In other words, "courts are not to eliminate through judicial interpretation words that were purposely included [in a statute]. . . ." *Banker v. Banker*, 196 W.Va. 535, 547, 474 S.E.2d 465, 477 (1996) (citations omitted). *See also* Syl. pt. 1, *Consumer Advocate Div. v. Public Serv. Comm'n*, 182 W.Va. 152, 386 S.E.2d 650 (1989) ("A statute, or an administrative rule, may not, under the guise of 'interpretation,' be modified, revised, amended or rewritten."). *Accord Longwell v. Board of Educ. of County of Marshall*, 213 W.Va. 486, 491, 583 S.E.2d 109, 114 (2003).

■ In accordance with the preceding analysis, we now hold that W. Va.Code § 5–11–9(7)(A) (1998) (2006) of the West Virginia Human Rights Act establishes three distinct causes of action. More specifically, pursuant to W. Va.Code § 5–11–9(7)(A), unless based upon a bona fide occupational qualification, or except where based upon applicable security regulations established by the United States or the state of West Virginia or its agencies or political subdivisions, it is an unlawful discriminatory practice for any person, employer, employment agency, labor organization, owner, real estate broker, real estate salesman or financial institution to: (1) engage in any form of threats or reprisal, or; (2) engage in, or hire, or conspire with others to commit acts or activities of any nature, the purpose of which is to harass, degrade, embarrass or cause physical harm or economic loss, or (3) aid, abet, incite, compel or coerce any person to engage in any of the unlawful discriminatory practices defined in W. Va. Code § 5–11–9.

To analyze the applicability of the foregoing holding to the circumstances presented in the instant case, we first consider whether the statute is applicable to an insurance company. The first paragraph of W. Va.Code § 5–11–9(7) sets out those to whom the following subsections, including subsection (A), apply, which is "any person, employer, employment agency, labor organization, owner, real estate broker, real estate salesman or financial institution." In the context presented in this case, the insurance company is not functioning as an employer, employment agency, labor organization, owner, real estate broker, real estate salesman or financial institution. Thus, this section is applicable to

14. The "Declaration of policy" contained in the Human Rights Act states:

It is the public policy of the state of West Virginia to provide all of its citizens equal opportunity for employment, equal access to places of public accommodations, and equal opportunity in the sale, purchase, lease, rental and financing of housing accommodations or real property. Equal opportunity in the areas of employment and public accommodations is hereby declared to be a human right or civil right of all persons without regard to race, religion, color, national origin, ancestry, sex, age, blindness or disability. Equal opportunity in housing accommodations or real property is hereby declared to be a human right or civil right of all persons without regard to race, religion, color, national origin, ancestry, sex, blindness, disability or familial status.

The denial of these rights to properly qualified persons by reason of race, religion, color, national origin, ancestry, sex, age, blindness, disability or familial status is contrary to the principles of freedom and equality of opportunity and is destructive to a free and democratic society.

W. Va.Code § 5–11–2 (1998) (Repl.Vol.2006). The Declaration cites only to unlawful discrimination in (1) employment, (2) places of public accommodations, and (3) in the sale, purchase, lease, rental and financing of housing accommodations or real property. However, W. Va.Code § 5–11–9 sets out causes of action against other entities that are not expressly stated in the Declaration. Under W. Va.Code § 5–11–9(2), specific types of unlawful discrimination are prohibited by employment agencies and labor organizations; W. Va.Code § 5–11–9(3) prohibits specific types of unlawful discrimination by a labor organization; W. Va.Code § 5–11–9(4) prohibits specific types of unlawful discrimination by a labor organization, employment agency or any joint labor-management committee; W. Va.Code § 5–11–9(5) prohibits specific types of unlawful discrimination by an employment agency. Thus it is clear that in, addition to W. Va.Code § 5–11–9(7)(A), the legislature has set out provisions in several other statutes that expand the application of the Human Rights Act to entities not listed in the Declaration. In the final analysis, the Declaration is simply a broad policy statement, not a limitation on the entities that are subject to the Human Rights Act.

an insurance company only if the insurance company falls within the meaning of the term "person." The term "person" is broadly defined in the Human Rights Act as "one or more individuals, partnerships, associations, organizations, corporations, labor organizations, cooperatives, legal representatives, trustees, trustees in bankruptcy, receivers and other organized groups of persons." W. Va.Code § 5–11–3(a) (1998) (Repl.Vol.2006). This plainly worded definition clearly includes an insurance company, as an "organization" or "corporation," within the meaning of the term "person." [15] Accordingly, we hold that, the term "person" is defined by the Human Rights Act, in W. Va.Code § 5–11–3(a) (1998) (Repl.Vol.2006), as "one or more individuals, partnerships, associations, organizations, corporations, labor organizations, cooperatives, legal representatives, trustees, trustees in bankruptcy, receivers and other organized groups of persons." Therefore, an insurance company is included within the meaning of the term "person" as used in W. Va.Code § 5–11–9(7) (1998) (2006).

We next look to the conduct prohibited by W. Va.Code § 5–11–9(7)(A). [16] As indicated above, one of the specific causes of action set out in W. Va.Code § 5–11–9(7)(A) prohibits a "person" from engaging in "acts or activities *of any nature*, the purpose of which is to harass, degrade, embarrass or *cause* physical harm or *economic loss* [to]" a member of a protected class, subject to certain exceptions not relevant here. [17] For purposes of the facts in the instant case, this language unambiguously proscribes specified acts of discriminatory conduct by any "person," the purpose of which is to cause economic loss to a member of a protected class. Hence, an insurer settling a property damage claim with a member of a protected class in a discriminatory manner that causes economic loss violates the act. [18]

Based upon the foregoing analysis, we now hold that W. Va.Code § 5–11–9(7)(A) (1998) (2006) of the West Virginia Human Rights Act, prohibits unlawful discrimination by a tortfeasor's insurer in the settlement of a

**15.** This Court has previously rejected an attempt to limit the application of the term "person" as used in W. Va.Code § 5–11–9(7). In *Holstein v. Norandex, Inc.*, 194 W.Va. 727, 461 S.E.2d 473 (1995), this Court addressed, *inter alia*, whether the term "person" included a co-worker. The circuit court had concluded that an employee *could not violate* the Human Rights Act based upon its reasoning that, because the definition of the term "person" found at W. Va.Code § 5–11–3(a) (1998) (Repl.Vol.2006) does not expressly include employees, W. Va.Code § 5–11–9(7) may not be violated by employees. We rejected that narrow interpretation and concluded that " 'this section does *not limit* the potential defendants to employers....' " *Holstein*, 194 W.Va. at 732, 461 S.E.2d at 478 (emphasis added) (quoting *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir.1993)). The *Holstein* Court went on to hold that "[t]he term 'person,' as defined and utilized within the context of the West Virginia Human Rights Act, includes ... employees...." Syl. pt. 3, in part, *Holstein, id.*

**16.** We wish to clarify that, to be covered under the Human Rights Act, prohibited actions must be perpetrated against a member of one of the specific protected classes identified therein. Although W. Va.Code § 5–11–9(7)(A) does not expressly state that it applies only to members of a protected class, this limitation is understood because W. Va.Code § 5–11–9 expressly proscribes "unlawful *discriminatory* practices." (Emphasis added). The meaning ascribed to the term "discriminate" or "discrimination" by the Human

Rights Act is "to exclude from, or fail or refuse to extend to, a person equal opportunities *because of race, religion, color, national origin, ancestry, sex, age, blindness, disability or familial status* and includes to separate or segregate." W. Va. Code § 5–11–3(h) (1998) (Repl.Vol.2006) (emphasis added).

**17.** The exceptions referred to are set out in the first paragraph of W. Va.Code § 5–11–9, which is quoted above with the text from W. Va.Code § 5–11–9(7)(A).

**18.** We note that, in their complaint and in their arguments before this Court, the Plaintiffs have alleged that State Auto discriminated against them based upon their race and "the fact that they reside[ ] in public housing." As explained above, the Human Rights Act applies only to discrimination based upon "religion, color, national origin, ancestry, sex, age, blindness, disability or familial status." W. Va.Code § 5–11–3(h). *Accord* W. Va.Code § 5–11–2 ("The denial of these rights to properly qualified persons by reason of race, religion, color, national origin, ancestry, sex, age, blindness, disability or familial status is contrary to the principles of freedom and equality of opportunity and is destructive to a free and democratic society."). While the Plaintiffs' allegations of discriminatory actions based upon their race are most certainly within the Act, we find nothing in the Act creating a protected class based upon the fact that an individual resides in public housing.

property damage claim when the discrimination is based upon race, religion, color, national origin, ancestry, sex, age, blindness, disability or familial status.[19]

■ Finally, we reject State Auto's argument that, because the UTPA precludes a third-party action against an insurer, the Plaintiffs' sole remedy is to file an administrative complaint with the Insurance Commissioner pursuant to the UTPA. *See* W. Va.Code § 33–11–4(a) (eliminating private cause of action by third-party claimants).[20] The declared purpose of the UTPA is to

regulate trade practices in the business of insurance in accordance with the intent of Congress as expressed in the act of Congress of March ninth, one thousand nine hundred forty-five (Public Law fifteen, Seventy-ninth Congress), by defining, or providing for the determination of, all such practices in this State which constitute unfair methods of competition or unfair or deceptive acts or practices and by prohibiting the trade practices so defined or determined.

W. Va.Code § 33–11–1 (1974) (Repl.Vol. 2006). Insofar as the UTPA regulates trade practices in the business of insurance, and the Human Rights Act seeks to remedy discrimination, the "rights and remedies of the Acts are considerably different and serve to fulfill different purposes." *Messer v. Huntington Anesthesia Group, Inc.*, 218 W.Va. 4, 20, 620 S.E.2d 144, 160 (2005). The *Messer* Court addressed whether a Human Rights Act claim involving a work-related injury was barred by the exclusivity provision of the Workers' Compensation Act, and reasoned that

[s]ince the Acts seek to remedy two separate harms, physical injury and discrimination, no conflict exists between the two Acts and it would be inconsistent with the purposes of the West Virginia Human Rights Act, W. Va.Code § 5–11–1 *et seq.*, to limit its applicability to physical-injury disabilities unrelated to work. The injury that Messer seeks to redress under the WVHRA is the indignity of the alleged discrimination against her because of her disability.

*Id.* Likewise, the UTPA and the Human Rights Act seek to remedy different harms, and no conflict exists between them. Therefore, we hold that the prohibition of a third-party law suit against an insurer under W. Va.Code § 33–11–4a(a) (2005) (Repl.Vol. 2006), does not preclude a third-party cause of action against an insurer under W. Va. Code § 5–11–9(7)(A) (1998) (2006) of the West Virginia Human Rights Act.

The Plaintiffs' complaints, relevant portions of which have been quoted above in the fact section of this opinion, clearly demonstrate that they are not asserting their claims under the UTPA. By repeatedly alleging that, *because of their race*, State Auto treated them differently than other claimants and failed to fairly investigate and settle their property damage claims, the Plaintiffs' claims fall squarely within the Human Rights

---

**19.** It should be noted, in passing, that we are not the first court to hold that an insurance company may be liable for discriminatory actions committed in the settlement of an insurance claim. *See, e.g., Broomes v. Schmidt*, No. CIV. A. 95–4845, 1996 WL 229369 (E.D.Pa. May 3, 1996) (mem.) (applying 42 U.S.C. § 1981, and finding racial discrimination in formation of insurance settlement contract fell within its scope); *Harris v. McDonald's Corp.*, 901 F.Supp. 1552 (M.D.Fla. 1995) (same); *Singh v. State Farm Mutual Automobile Insurance Co.*, 860 P.2d 1193 (Alaska 1993) (same). *See also; Ellis v. Safety Insurance Co.*, 41 Mass.App.Ct. 630, 672 N.E.2d 979 (1996) (applying state law and allowing plaintiff to proceed past summary judgment stage with civil rights claim based upon an insurance settlement); *Lesser v. Boston Old Colony Ins. Co.*, No. 9903474, 2001 WL 34038581, at \*3 (Mass.Super.

Ct. April 6, 2001) (finding plaintiff had "standing to maintain her claim against [insurance company] for violation of her right under G.L.c. 93, § 102 to enforce contracts to the same extent enjoyed by white male citizens."). Additionally, we note that the State of California, by regulation, has expressly prohibited discrimination by insurance companies in settling claims. *See* Cal. Admin. Code tit. 10, § 2695.7(a) (2006) ("No insurer shall discriminate in its claims settlement practices based upon the claimant's age, race, gender, income, religion, language, sexual orientation, ancestry, national origin, or physical disability, or upon the territory of the property or person insured.").

**20.** See *supra* note 10 for the text of W. Va.Code § 33–11–4(a).

Act.[21]

## IV.

## CONCLUSION

After considering the certified question from the Circuit Court of Kanawha County, as reformulated, we respond as follows:

Does the West Virginia Human Rights Act prohibit discrimination by a tortfeasor's insurer in the settlement of a property damage claim asserted by a member of a protected class under the Act?

Answer: Yes

Having answered the foregoing certified question, as reformulated, we remand this matter to the Circuit Court of Kanawha County for further proceedings consistent with this opinion.

Certified Question Answered.

Justice BENJAMIN and Justice WORKMAN disqualified.

Judge RONALD E. WILSON and Senior Status Judge HERMAN G. CANADY, sitting by temporary assignment.

Justice KETCHUM dissents and reserves the right to file a dissenting opinion.

Justice McHUGH concurs in part, and dissents in part, and reserves the right to file a separate opinion.

KETCHUM, J., dissenting:

*Unfounded Judicial Expansion of Our Law*

The Human Rights Act has the salutary goal of stamping out numerous pernicious forms of discrimination. It appropriately declares that discrimination based upon race, religion, color, national origin, ancestry, sex, age, blindness, disability or familial status are corrosive to the principles of freedom, and destructive to a free and democratic

society. *See W. Va. Code*, 5–11–2 [1998]. Motivated by this goal of eliminating discrimination, the majority opinion judicially expands the Human Rights Act into the field of property insurance settlements. The Human Rights Act does not extend as far as the majority opinion has interpreted it to reach. Let me explain.

On the one hand, I firmly believe that every resident of this State is entitled to fair treatment by an insurance company. An insurance company should *never* settle a claim using any of the "terrible ten" factors—race, religion, disabilities, and so on—in the Act as a guide. An insurance company that chooses to rely on race or religion or any of the other wrongful grounds in the Act to guide settlement decisions is acting in an arbitrary and capricious manner, and is a red flag begging the insurance company to be punished for its callousness, one way or another.

But on the other hand, in my 41 years of practicing law, I *never* had a client who felt that an insurance company *hadn't* discriminated against them in some way, shape or form in settling their claim. This notion was held by all claimants, regardless of their race, creed, origin or status. *Every* person making a claim against an insurance company thinks they wrongfully got the short end of the stick. Because of that, I think the majority opinion has created a situation ripe for abuse by a handful of litigation lawyers.

The West Virginia Unfair Trade Practices Act, *W. Va. Code*, 33–11–1 to –10, previously allowed third-party claimants to file suit against a tortfeasor's insurance company for specific types of "unfair discrimination" and "unfair claim settlement practices."[1] It was a good law that heightened a plaintiff's ability to negotiate with a behemoth insurance company bureaucracy.

---

**21.** By answering the certified question in this manner, we find only that a cause of action for discrimination in the settlement of a property damage claim may be asserted. We make no determination regarding the merits of the underlying case or the effect of the releases executed by Doris and Kitrena Michael. See *supra* notes 2 and 3 for a brief recognition of the existence of, and quotations from, the releases.

**1.** *See* Syllabus Point 2, *Jenkins v. J.C. Penney Cas. Ins. Co.*, 167 W.Va. 597, 280 S.E.2d 252 (1981) ("An implied private cause of action may exist for a violation by an insurance company of the unfair settlement practice provisions of W. Va. Code, 33–11–4(9)[.]")

Unfortunately, in the past, a handful of overly-aggressive lawyers routinely capitalized upon their clients' senses of being discriminated against, and routinely alleged frivolous unfair settlement practice claims in every damage lawsuit they filed. Some lawyers spent most of their time "setting up" insurance companies for unfair settlement practice suits rather than focusing on fairly developing and quickly resolving their client's injury claims. These practices by a few lawyers provided the ammunition for the Legislature to eliminate third-party unfair claim settlement practice lawsuits in 2005. The Unfair Trade Practices Act, *W. Va.Code*, 33–11–4a [2005], now explicitly states:

A third-party claimant may not bring a private cause of action or any other action against any person for an unfair claims settlement practice.

In place of these "bad faith" suits, the Legislature provided a new (but, by all reports, wholly unsatisfactory) remedy for discriminatory and unfair settlement practices. Now, the statutory remedy for third-party unfair claims practices and unfair settlement discrimination is to file what so far appears to be a largely ineffective administrative complaint with the virtually toothless insurance commissioner. *See W. Va.Code*, 33–11–4a.

Put another way, the Legislature has already provided a remedy—albeit, a weak one—for unfair discrimination in the course of resolving a third-party insurance claim. Because the Legislature has explicitly created a remedy in the Unfair Trade Practices Act, I am troubled that the majority opinion chose to judicially infer the existence of a similar, separate remedy in the Human Rights Act. The Human Rights Act contains no language purporting to regulate insurance settlements. It is reasonable to assume that there would have been at least *some* specific reference to insurance settlements in either the language of the Human Rights Act, or the rules of the Human Rights Commission, or in the legislative history of the Act. There is none. In fact, the website for the

Human Rights Commission says the Commission only "investigates and litigates acts of illegal discrimination in the areas of: Employment, Housing and places of Public Accommodations."[2]

What I foresee, in the future, is that the Human Rights Act will be subjected to the same abuse that maligned the Unfair Trade Practices Act. A handful of litigators will unleash a flood of lawsuits alleging discrimination in the settlement of a third-party property damage claims by insurance companies—and in most of those cases, the evidence of "discrimination" will be entirely spurious. The majority opinion stresses that there must be a causal connection between the claimant's "terrible ten" status (*i.e.*, race, religion, color, national origin, *etc.*) and the actions of the insurance company in order to assert a claim under the Human Rights Act. But my years of practicing law has taught me that a mere allegation of unlawful discrimination can be a powerful weapon for negotiation of a spurious claim. Jurors do not like insurance companies.

Again, I am also concerned that, among the discriminatory activities listed by the Human Rights Act, discriminatory insurance settlements are not listed as an evil that the Act seeks to eradicate. Justice Cleckley teaches that when we interpret the Human Rights Act, we should look to Section 2 of the Act to determine its purposes and goals. *See West Virginia Human Rights Com'n v. Garretson*, 196 W.Va. 118, 123–127, 468 S.E.2d 733, 738–742 (1996). Section 2 of the Act declares that it was intended to provide three things: "equal opportunity for employment, equal access to places of public accommodations, and equal opportunity in the sale, purchase, lease, rental and financing of housing accommodations or real property." *W. Va. Code*, 5–11–2 [1998]. The majority opinion does not specify which of these three categories a third-party insurance settlement fits into—in fact, the parties never raised this issue or made any argument on this question.[3]

**2.** *See* http://www.wvf.state.wv.us/wvhrc/jurisdiction.htm, accessed April 23, 2010.

**3.** I can only assume that the majority opinion presumed that discrimination in the course of a third-party claim settlement was the denial of a

In sum, the Legislature did not consider the complexity of insurance claims settlement when it drafted the Human Rights Act. For instance, the majority opinion has interpreted the Human Rights Act as preventing insurance discrimination on the basis of age; yet the Unfair Trade Practices Act explicitly *allows* insurance companies to make decisions in the sale of life insurance on the basis of age.[4] Under the Unfair Trade Practices Act, insurance companies have to charge customers with the same expected life duration the same premium; if the customers are older or younger, and therefore have a different expectation of life, then the insurance company can charge different premiums. I believe that the majority opinion can and will be misconstrued by lawyers to say that premium decisions which are allowed under the Unfair Trade Practices Act will now be illegal under the Human Rights Act.

I do not believe that the Legislature intended for the Human Rights Act to extend beyond employment, housing and access to public accommodations to the nebulous, highly-regulated realm of insurance law. I therefore respectfully dissent.

McHUGH, Justice, concurring, in part, and dissenting, in part:

I wholeheartedly agree with the majority's endeavor to eliminate acts of racial or income-based discrimination in connection with insurance settlements. Without question, the aim of the West Virginia Human Rights Act ("Act")[1] to prevent discriminatory conduct remains as laudatory in purpose as when the legislation was initially adopted in 1967. However, the majority's conclusion that the Legislature has authorized third parties to assert a cause of action for allegedly discriminatory insurance settlements based on the protections extended by the Act is untenable. This is because third-party relief for insurance-related discrimination has never been expressly, or even impliedly authorized in the Act, or in any other legislative enactment for that matter.[2] As a result, the majority has clearly exceeded both the scope of the Act and the intended reach of the Act's protections.

In deciding that the Legislature has authorized a third-party cause of action for discriminatory insurance settlements under the Act, the majority overlooks numerous impediments, both legal and logical. First and foremost, is the fact that the Act was never intended to and *does not* address the subject of insurance.[3] Nowhere in the Act is there any language that pertains to the issue of proscribing discriminatory acts in connection with insurance—be it the procurement of a policy or the settlement of a claim. A review of the Act, both its policy statement and its provisions, makes clear that the Legislature intended to limit the reach of the discriminatory conduct prohibited by the Act to matters that involve (1) employment; (2) *access* to places of public accommodation; and (3) procuring housing accommodations or real property and obtaining related financing. *See* W. Va.Code § 5–11–2 (setting forth legislative purpose of W.Va. Human Rights Act).

By presuming that the Plaintiffs' residency in public housing brought them within the ambit of the Act,[4] the majority misapprehends the protections extended by the Act. The definition of "place of public accommoda-

---

"place[ ] of public accommodation." *See, W. Va. Code*, 5–11–3(j) [1998].

**4.** The Unfair Trade Practices Act, *W. Va.Code*, 33–11–4(7)(a) [2002], states:

No person shall make or permit any unfair discrimination between individuals of the same class and equal expectation of life in the rates charged for any contract of life insurance or of life annuity or in the dividends or other benefits payable thereon, or in any other of the terms and conditions of the contract.

**1.** *See* 5–11–1 to –21 (2006).

**2.** *But see* W. Va.Code § 33–11–4(7) (2006) (prohibiting unfair discrimination in connection with insurance rate setting); W. Va.Code § 33–11–4(9) (proscribing specified "unfair claim settlement practices").

**3.** *See* Syl. Pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975) ("The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature.").

**4.** Plaintiffs contend that they "are members of a protected class under the West Virginia Human Rights Act as they are black and reside in public housing."

tion" provided by the Act demonstrates that public housing and public accommodations are not synonymous. A "place of public accommodations" is defined, in pertinent part, as "any establishment or person ... which offers its services, goods, facilities or accommodations to the general public...." W. Va.Code § 5–11–3(j). By definition, public housing is not a "place of public accommodations" because it is not available to the general public.[5] Through its use of the phrase "place of public accommodations," the Legislature was addressing its concern that citizens of this state be provided equal access to places that are utilized by the general public. Thus, the Plaintiffs' residence in public housing does not make them members of a "protected class" under the Act. It is worth noting that a separate legislative enactment—the West Virginia Fair Housing Act—was adopted for the purpose of addressing issues of discrimination that arise in connection with the sale or rental of housing and the "provision of services or facilities in connection therewith." [6] W. Va.Code § 5–11A–5(b).

The area of insurance regulation is separately and extensively addressed in chapter thirty-three of our state code. See W. Va. Code §§ 33–1–1 to 33–48–12 (2006 & Supp. 2009). Had the Legislature intended to establish a third-party cause of action for discriminatory settlements, both reason and logic suggest that the enabling provision would have been included within that area of the state code expressly reserved for insurance

regulation.[7] See id. This conclusion is buttressed by the fact that this Court relied upon a provision in chapter thirty-three to recognize the existence of an implied third-party cause of action for bad faith settlements. See W. Va.Code § 33–11–4(9).[8] And when the Legislature acted to eliminate those third party bad faith causes of action, the clarifying legislation was also enacted as part of chapter thirty-three.[9] See W. Va. Code § 33–11–4a (2005).

In unmistakably clear terms, the Legislature confined the application of the Act to "only those practices specified in section nine [§ 5–11–9] of this article" that are expressly deemed to be "unlawful discriminatory practices." W. Va.Code § 5–11–3(i). Citing specifically to this limiting language, we have recognized that the principle of liberally construing the Act for purposes of effecting its purposes set forth in West Virginia Code § 5–11–15 "does not apply in ascertaining if an act is an unlawful discriminatory practice" in light of subsection 3(i). *W. Va. Inst. of Tech. v. W. Va. Human Rights Comm'n,* 181 W.Va. 525, 537 n.17, 383 S.E.2d 490, 502 n. 17 (1989). Because the Act cannot apply to any discriminatory conduct unless the proscribed conduct falls squarely within subsection nine, the absence of any reference to insurance in the Act is significant. See W. Va.Code § 5–11–9.

In trying to find a way to bring an insurance settlement under the Act, the majority looks to the language of West Virginia Code

---

**5.** Various issues such as income level, disability, or other legislatively-designated factors control whether an individual qualifies to reside in public housing.

**6.** The fact that the Plaintiffs did not assert a claim under the W. Va. Fair Housing Act further suggests that their residency in public housing has no legal significance to the underlying claim. While I appreciate the Plaintiffs' position that they received less damages (not for actual property damage but for their aggravation and inconvenience in connection with their property damage claims) than they believed they were entitled to based on their public housing residency, their claim is controlled by insurance laws and not our human rights laws. *See, e.g.,* W.Va.R. Insurance 114 § 14–6.4.b. (setting forth insurance regulations controlling determination of whether an insurance settlement is "unreasonably low").

**7.** It is unavailing to suggest that the subject matter of discrimination, as it relates to insurance, would not be contained in chapter thirty-three as the Legislature has included the issue of "unfair discrimination" with regard to both rate setting and benefits payable in West Virginia Code § 33–11–4(7).

**8.** *See Jenkins v. J.C. Penney Cas. Ins. Co.,* 167 W.Va. 597, 280 S.E.2d 252 (1981), *superseded by* W. Va.Code § 33–11–4a (2005).

**9.** Logic also undercuts the notion that a legislature who has acted to eliminate third-party causes of action within the schema of insurance regulation would sanction third-party relief against insurers under the human rights act.

§ 5–11–9(7)(A). That provision makes it an "unlawful discriminatory practice" to:

> Engage in any form of threats or reprisals, or to engage in, or hire, or conspire with others to commit acts or activities of any nature, the purpose of which is to harass, degrade, embarrass or cause physical harm or economic loss or to aid, abet, incite, compel or coerce any person to engage in any of the unlawful discriminatory practices defined in this section.

W. Va.Code § 5–11–9(7)(A).

Following the Plaintiffs' lead, the majority "cherry picks" certain terms ("embarrass" and "economic loss") from subsection seven (A) to serve its purposes. At the core of the Plaintiffs' complaint is their contention that they were under-compensated for the "aggravation and inconvenience associated with being displaced from their home."[10] Understandably, the Plaintiffs sought to come under the only provision of the Act that refers to monetary loss[11] as a means of increasing the amount of their insurance settlement.[12] Falling into the intellectual trap set by the Plaintiffs, however, the majority fails to appreciate that the emphasis of West Virginia Code § 5–11–9(7)(A) is not the nature of the resulting harm (i.e. emotional or monetary) but the fact that the conduct was specifically aimed at causing the harm that results. I submit that in overlooking this pivotal language that requires purposeful discrimination, the majority goes seriously astray of the Legislature's intent.

In the six subsections that precede subsection seven of West Virginia Code § 5–11–9, each provision is clearly aimed at two of the three subject matters identified in the Act's statement of legislative purpose. *See* W. Va. Code § 5–11–2. Those two matters are employment and access to places of public accommodation. Subsections one through five are expressly directed at the actions of employers, employment agencies, or labor organizations. *See* W. Va.Code § 5–11–9(1) to (5). Subsection six is directed at any person who is a[n] "owner, lessee, proprietor, manager, superintendent, agent, or employee of any place of public accommodations." W. Va.Code § 5–11–9(6). The final subsection—subsection seven—is directed at "any person, employer, employment agency, labor organization, owner, real estate broker, real estate salesman or financial institution." W. Va. Code § 5–11–9(7). In contrast to the preceding six subsections, subsection seven is written in a broader and more encompassing fashion. It is the only subsection that addresses the third aim of the Act: the procurement or financing of housing or real property.

To bring insurers under the Act, the majority concludes that an insurance company comes within the meaning of the term "person" as that term is used in West Virginia Code § 5–11–9(7). *See* W. Va.Code § 5–11–3(a). When you consider the definition of "person" under the statutory definition set forth in West Virginia Code § 5–11–3(a)[13] independent of any other provision of the Act, an insurance company could conceivably fall under the list of entities that qualify as persons. But when you plug that term into West Virginia Code § 5–11–9(7)(A) and conclude, as does the majority, that the Legis-

---

**10.** The Plaintiffs do not challenge the amount of the settlement moneys they received in connection with their respective actual property damage claim (Doris Michael and Todd Battle received $19,446.56 and Kitrena Michael received $3,545.15). What they take issue with is the non-economic aspect of the loss—the "inconvenience and aggravation" they sustained in connection with their property damage claim.

**11.** As the majority acknowledged, the Plaintiffs cited to West Virginia Code § 5–11–9(A), rather than 5–11–9(7)(A), in their complaints. By averring that the defendant insurer acted "in such a way as to degrade the plaintiffs, to embarrass the plaintiffs and to cause the plaintiffs economic loss as set forth in 5–11–9(A)," they do appear to

be referring to the language of West Virginia Code § 5–11–9(7)(A) in their complaint.

**12.** Because the type of damages the Plaintiffs complain about (aggravation and annoyance) are generally viewed as non-economic in nature, it is questionable whether such alleged loss could even be claimed under W. Va.Code § 5–11–9(7)(A).

**13.** A "person" is defined under the Act to include "one or more individuals, partnerships, associations, organizations, corporations, labor organizations, cooperatives, legal representatives, trustees, trustees in bankruptcy, receivers and other organized groups of persons." W. Va.Code § 5–11–3(a).

lature was specifically including insurers within the entities subject to action upon commission of the specified acts of unlawful discrimination, the application does not withstand scrutiny. My conclusion is premised on the fact that the delineated acts of unlawful discrimination in each of the subsections of section nine, as well as the parties to whom subsection seven is aimed at, all fall within one of the Act's three concerns: (1) employment; (2) access to public accommodation; and (3) procurement of housing or real estate and related financing. *See* W. Va.Code § 5–11–9(7)(A). As the Act does not contain even one reference to insurance, it is simply illogical to reach the conclusion that the Legislature specifically included insurers among the potential discriminatory actors it was targeting by its use of the term "person." *See* W. Va.Code §§ 5–11–3(i), –9, –(9)(7). What makes infinitely more sense is to view the legislative omission of insurers from the designated list of potential discriminators as intentional.

Not only is the majority's decision to find authority for including insurers under the definition of "person" demonstrably inconsistent with the Act's purposes, it requires the presumption that by its use of the term "person" the Legislature decided to cast its "unlawful discriminatory practice" net in an uncharacteristically broad fashion. This seems improbable given that the Legislature intentionally constrained the reach of the Act so that it applies to only those "unlawful discriminatory practices" that are expressly set forth in section nine. *See* W. Va.Code § 5–11–9–3(i). The legislative framework of subsection seven correlates specific entities such as employers, labor organizations, and proprietors of places of public accommodation to particularized acts of unlawful discrimination. With the exception of the term "person," each of the entities that is specified within West Virginia Code § 5–11–9(7)(A) falls squarely within the legislatively-identified purposes of the Act. As a result, the majority's reliance upon the arguably amorphous term "person" as the *only* mechanism by which the Legislature expressed its intent to bring insurance companies under the Act appears both specious and misguided. *See Davis Mem'l Hosp. v. State Tax Comm'r*, 222

W.Va. 677, 683, 671 S.E.2d 682, 688 (2008) (recognizing that "statute should be so read and applied as to make it accord with the spirit, purposes, and objects of the general system of law of which it is intended to form a part") (citations omitted).

In addition to wrongly finding insurers within the intended reach of the Act, the majority adopted an overly-broad new point of law in holding in its syllabus point seven that West Virginia Code § 5–11–9(7)(A) "prohibits unlawful discrimination by a tortfeasor's insurer in the settlement of a property damage claim when the discrimination is based upon race, religion, color, national origin, ancestry, sex, age, blindness, disability or familial status." The question presented by the lower court was limited to seeking guidance on whether the Act provides for a cause of action against a tortfeasor's insurance carrier when the alleged discriminatees are African–American and reside in public housing. Not only did the majority go beyond what was necessary to resolve the question presented, but it failed to properly tailor the new point of law to the statutory language upon which it expressly relies as authority for a third party cause of action. Missing from syllabus point seven is language which tracks the statutory requirement of West Virginia Code § 5–11–9(7)(A) that the alleged discriminatory conduct was effected for the purpose of causing the statutorily-specified harms. The Legislature was clear in subsection seven (A) that it is not the conduct alone that is the triggering event, but the fact that such conduct was effected for the express *purpose* of harassment, degradation, embarrassment, physical harm, or economic loss. *See* W. Va.Code § 5–11–9(7)(A) (emphasis supplied). By its omission of this essential statutory language, the majority has improperly and unwisely broadened the scope of subsection seven (A) with absolutely no legislative authority. *See id.*

In its rush to create a new cause of action, the majority overlooks the critical fact that a cause of action already exists for the conduct at issue in the underlying case. Under 42 U.S.C. § 1981 (2006), "[a]ll persons ... shall have the same right in every State and Territory *to make and enforce contracts*, to sue,

be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens...." *Id.* (emphasis supplied). The authority to seek redress for discrimination occurring in the context of insurance claims and settlements has been recognized to exist under this federal rights statute. *See Harris v. McDonald's Corp.,* 901 F.Supp. 1552, 1558 (M.D.Fla.1995); *Singh v. State Farm Mut. Auto. Ins. Co.,* 860 P.2d 1193, 1198–99 (Alaska 1993).[14]

Under 42 U.S.C. § 1981, the statutory language that pertains to the making and enforcement of contracts is the fulcrum that permits a cause of action for discriminatory insurance settlements to be maintained. Commenting on why insurance settlements fall under this language, the Alaskan Supreme Court observed: "It is well established that a settlement is a contract, provided that it meets minimal contractual requirements." *Singh,* 860 P.2d at 1199. It is of no surprise then that every single court which has recognized the type of claim under discussion has either looked to a state enactment that expressly recognizes relief for discrimination in connection with the making of or enforcement of contracts[15] or to 42 U.S.C. § 1981. Based on the authority relied upon by the majority, it is clear that West Virginia is the only state to recognize a cause of action for third-party relief under a state human rights act when the subject legislation lacks a provision that expressly prohibits

discrimination with regard to the making and enforcement of contracts.[16] This distinction is not only critical, it is determinative.

Because our Act lacks the necessary basis for asserting discriminatory conduct against insurance companies—either inclusion of "the making and enforcement of contracts" language or specific identification of insurers as entities within the intended reach of the Act—the majority's conclusion that the Act "prohibits unlawful discrimination by a tortfeasor's insurer in the settlement of a property damage claim" is not defensible. Rather than condoning any acts of alleged discriminatory conduct that may have occurred in this case, I seek only to apply the statute as it was written.[17] Convinced that the Act does not authorize a third party cause of action against insurers, I respectfully dissent from the majority's conclusion to the contrary. Of the four new points of law created by the majority, I do not take issue with the thrust of syllabus point five because it merely recites the statutory language of West Virginia Code § 5–11–9(7)(A).[18] Accordingly, I concur, in part, and dissent, in part.

14. While the plaintiffs could have included a claim for relief under 42 U.S.C. § 1981 in their complaint, they did not.

15. *See Ellis v. Safety Ins. Co.,* 41 Mass.App.Ct. 630, 672 N.E.2d 979, 987 (1996) (applying state law to allow first-party civil rights claim to survive summary judgment but disallowing third-party claim based on lack of contractual relationship between third parties and insurer).

16. While the majority cites California as prohibiting discrimination in insurance settlements, that codification does not provide for a third-party cause of action. *See* Cal.Code Regs. Administrative Law 10, § 2695.7(a) (2006).

17. While the majority claims to be applying the Act, the absence of a defensible basis for presum-

ing that the Legislature intended to address the issue of insurance-related discrimination outside chapter thirty-three of the Code demonstrates that the majority has indeed engaged in interpretation to reach its desired result.

18. With regard to the majority's statement in syllabus point five that three distinct causes of action are created in West Virginia Code § 5–11–9(7)(A), the Act does not explicitly recognize the establishment of a cause of action for the proscribed discriminatory conduct. Instead, the Act contemplates the filing of a complaint before the Human Rights Commission. *See* W. Va.Code § 5–11–10. As an alternative to filing such a complaint, this Court has recognized that relief may be sought from a circuit court. *See* Syl. Pt. 1, *Price v. Boone County Ambul. Auth.,* 175 W.Va. 676, 337 S.E.2d 913 (1985).